[No. 23871.   *En Banc.*   November 30, 1932.]

KITSAP COUNTY TRANSPORTATION COMPANY, *Petitioner,*
v. THE DEPARTMENT OF PUBLIC WORKS *et al.,*
*Respondents.*[1]

*Byers & Byers, Philip D. Macbride,* and *George W. Williams,* for petitioner.

*Bogle, Bogle & Gates, Edward G. Dobrin,* and *Cleland & Clifford,* for respondents.

*Bailey & Croson* and *Kerr & McCord, Amici Curiae.*

[1]Reported in 16 P. (2d) 828.

PARKER, J.—This proceeding was commenced as a statutory review proceeding in this court by the Kitsap County Transportation Company, hereinafter called the Kitsap company, against our department of public works, hereinafter called the department, and the Puget Sound Navigation Company, hereinafter called the sound company, seeking review and reversal of an order of the department rendered against the Kitsap company touching its steamboat service between Seattle and Bainbridge island. Review of the order directly in this court is sought under the provisions of chapter 119, Laws of 1931, p. 363, which, in terms, purports to amend Rem. Comp. Stat., §§ 10428, 10429, and repeal § 10430, and thereby divest the superior court of its reviewing jurisdiction over the department and vest in this court directly exclusive jurisdiction over the department.

In our recent decision in *North Bend Stage Line, Inc. v. Department of Public Works, ante* p. 217, 16 P. (2d) 206, we held chapter 119, Laws of 1931, p. 363, to be unconstitutional, in so far as that chapter assumes to confer upon this court the exclusive reviewing jurisdiction therein prescribed. We also there held that chapter to be unconstitutional, in so far as it assumes to deprive the superior court of its review and certiorari jurisdiction. We also there held that Rem. Comp. Stat., §§ 10428, 10429 and 10430, remain unamended and unrepealed by chapter 119, Laws of 1931, p. 363, which sections provide for review by the superior court of orders of the department and appeal to this court from judgments of the superior court rendered upon such review in that court.

The question of the constitutionality of chapter 119, Laws of 1931, p. 363, was ably argued in this court at the same hearing by counsel for the respective parties to that proceeding and to this proceeding. At that

hearing, each proceeding was also argued by respective counsel therein upon the merits.

It is apparent in this proceeding that the Kitsap company has now, by lapse of time, lost its right of review in the superior court, under Rem. Comp. Stat., §§ 10428, 10429 and 10430, though those sections are now held to be unrepealed; that is, the Kitsap company has now, without fault, lost its remedy under those sections, just as the stage line, without fault, lost its remedy under those sections, the constitutionality of chapter 119, Laws of 1931, p. 363, not having been challenged in any respect until after the commencement of this proceeding thereunder, and after the expiration of the time for the commencing of review proceedings under Rem. Comp. Stat., §§ 10428, 10429 and 10430. So in this proceeding in this court, as in the stage line proceeding in this court, we are of the opinion that we should now retain and dispose of this proceeding upon its merits under our discretionary constitutional certiorari jurisdiction; though we would not now exercise that discretionary jurisdiction were there any other considerations present than the mere nature of the merits of this controversy. We therefore proceed to the merits.

The controlling facts, in so far as need be here noticed, touching the merits, we think, may be fairly summarized as follows: Bainbridge island is approximately ten miles long, measured north and south. It has an average width of approximately three miles. The general courses of its east and west shores are both very nearly north and south. There is a ferry boat landing at Port Blakely, on the east shore of the island, about one and one-half miles north of its south end, and about seven and one-quarter miles almost due west of the landings in Seattle, where the boats of the Kitsap company and the sound company land in that

city. There is a boat landing at Manitou Beach, on the east shore of the island, about four miles north of the Port Blakely landing and about seven and one-half miles north of west of the Seattle landing of the boats of the Kitsap company and the sound company.

There are several other boat landings on the east shore of the island; two on the north shore, and several on the west shore, including a ferry landing at Fletcher Bay, about two miles east of the ferry landing at Brownsville on the east shore of the mainland of Kitsap county. On that mainland shore of Kitsap county, there are several other boat landings, including Suquamish opposite the north end of the island. The island constitutes a part of the territory of Kitsap county, though transportation of all kinds is much greater in extent between the island and Seattle than it is between the island and the mainland of Kitsap county.

The permanent resident population of the island, according to the last Federal census, is 3,005. The summer population is variously estimated by private persons at from 6,000 to 18,000. These estimates, manifestly, are of little value as furnishing any accurate information as to the summer population. It seems, however, that the summer population is much larger than the permanent resident population; this because of the desirability of the island for summer residence.

On March 29, 1928, the Kitsap company was the owner of certificates Nos. 1, 28, 29, 30, 31, 32, and 33, theretofore issued to it by the department of public works, authorizing it to furnish steamboat service between Seattle and the places above mentioned, including service between the island and the mainland of Kitsap county. These certificates had been issued to the Kitsap company following the enactment of chapter 248, Laws of 1927, p. 382 (Rem. 1927 Sup.,

§ 10361-1), our steamboat certificate law, and were apparently so-called "good faith certificates;" that is, certificates issued to the Kitsap company because that company was rendering those services at the time of the enactment of chapter 248, Laws of 1927.

On March 29, 1928, the department, on application of the Kitsap company, awarded to it a new certificate No. 1, revising and consolidating its rights under the several certificates, above mentioned, as follows:

"IT IS HEREBY ORDERED, That S. B. C. Certificates Nos. 1, 28, 29, 30, 31, 32 and 33 standing in the name of Kitsap County Transportation Company be and the same are hereby cancelled; that a new certificate bearing No. 1 be issued in lieu thereof authorizing Kitsap County Transportation Company to furnish by vessel

"FREIGHT, PASSENGER AND FERRY SERVICE

Between Seattle and Winslow, Washington, via Creosote, Wing Point Dock, Hawley Dock, Eagle Dale Dock, Hall's Shipyard and Winslow Dock;

Seattle and Poulsbo, Washington, via Port Madison, Sebold, U. S. Torpedo Station, Keyport, Virginia, Lemolo, Pearson and Scandia;

Seattle and Rolling Bay, Washington, via Y. W. C. A., Yeomalt, Fern Cliff, Manitou Beach and Moran's (Manitou Park);

"FERRY SERVICE

Between Seattle and Suquamish, Washington, via Indianola; Fletcher Bay and Brownsville, Washington;

Seattle and Port Blakeley, Washington, via the Country Club; . . ."

No boat service of any nature has been rendered between Seattle and the island, or between the island and the mainland of Kitsap county, other than such as has been rendered by the Kitsap company, since long prior to the enactment of chapter 248, Laws of 1927, p. 382 (Rem. 1927 Sup., § 10361-1). Since the consolidation of the Kitsap company's rights into the

new certificate No. 1, it has continued its service as theretofore, and, in addition, has put into service a large ferry boat between Seattle and Port Blakely on the island, and a smaller ferry boat between Fletcher Bay on the island and Brownsville on the mainland of Kitsap county. Each of these services seems to have been satisfactory within itself. These are ferry boat services in the fullest sense; that is, the boats are suitable for the transportation of vehicles and equipped for driving such vehicles directly on and off the boats.

The other service which has been continued is ordinary passenger and freight service to and from the various landings above mentioned. This service seems to have been satisfactory within itself. However, the adequacy of these services, each within itself, is not the real question here to be considered by us, as will presently appear.

On September 21, 1931, the sound company filed with the department its application for a certificate authorizing it to furnish ferry service direct between Seattle and Manitou Beach; that is, ferry service by boat so equipped as to enable vehicles to be driven directly on and off the boat at those landings. On November 28, 1931, the sound company filed with the department its application, supplemental to the above mentioned application, for a certificate authorizing it to furnish such ferry service between the island and the Kitsap county mainland, on a course westerly from a point approximately a mile south of the north end of the island, which point is about four miles north of the Fletcher Bay ferry landing. Thereupon, the Kitsap company filed its protest against the granting of such certificates to the sound company.

These applications and protest came on for hearing before the department together. Following that hearing, the department made findings, in substance, that

such applied-for ferry service is a public necessity, and entered its order reading as follows:

"WHEREFORE IT IS ORDERED That the application of the Puget Sound Navigation Company herein be granted and S. B. C. Certificate 41, standing in its name, be amended to authorize in addition to service now authorized, ferry service between Seattle and Manitou Beach and between Bainbridge Island and Kitsap Peninsula across Agate Pass."

Two members of the department concurred in the making of these findings and the entering of this order, the third member dissenting. The other certificate service of the sound company is elsewhere. It never had any certificate right of service to or from the island.

In chapter 248, Laws of 1927, p. 382, our steamboat certificate law, we read:

" . . . the department shall not have power to grant a certificate to operate between districts and/or into any territory already served by an existing certificate-holder, unless such existing certificate-holder shall fail and refuse to furnish reasonable and adequate service. . . . The department may at any time by its order duly entered after hearing had upon notice to the holder of any certificate hereunder and an opportunity to such holder to be heard, suspend, revoke, alter, or amend any certificate issued under the provisions of this act, if the holder thereof wilfully violates or fails to observe the provisions or conditions of the certificate or the orders, rules or regulations of the department, or the provisions of this act." Rem. 1927 Sup., § 10361-1.

We have seen that, by the consolidated certificate No. 1, the Kitsap company has the right to furnish, "freight, passenger, and ferry service between Seattle and Rolling Bay, Washington, via Y. W. C. A., Yeomalt, Fern Cliff, Manitou Beach and Moran's." By reason of the proximity of these named places upon the east shore of the island, this is but little short of

a direct service between Seattle and Manitou Beach. The Kitsap company has been, and is, furnishing boat service between these places and Seattle, other than strictly vehicle ferry service.

The proposed ferry service by the sound company manifestly is intended to supplant not only the Kitsap company's vehicle ferry service rights, but is also intended to supplant, and will have the effect of largely supplanting, the Kitsap company's general passenger service between Manitou Beach and Seattle. Manitou Beach is apparently the most central and the most used place for the embarking and discharging of freight and passengers of any of these named places.

It may be that the Kitsap company should be required to improve its service between Manitou Beach and Seattle by the furnishing of a vehicle ferry service on that route, in addition to its passenger and freight service. It may also be that the Kitsap company should be required to extend or change its vehicle ferry service to and from the island to some other route or routes of higher public necessity than the Seattle-Manitou Beach route, or even than the Seattle-Port Blakely route. It has never been by the department required so to do; nor has any complaint ever been made to the department asking it to hold a hearing looking to that end; nor has the department itself ever undertaken to hold a hearing looking to that end. This, we think, is wherein the certificate rights of the Kitsap company have been unlawfully violated by the department in entering its order which we are here reviewing.

In *State ex rel. United A. T. Co. v. Dept. of Public Works,* 119 Wash. 381, 206 Pac. 21, there was a problem similar to that here involved, but under the motor vehicle transportation certificate statute. Judge Mackintosh, speaking for the court in that case, said:

"It is the relator's contention that, under § 4 of ch. 111, p. 341, Laws of 1921, the respondents could not grant a certificate to Miller in the absence of an order, after a proper hearing before the department, directing the relator to provide satisfactory service, and after a refusal of the relator to obey the order of the respondents to provide additional service, or to change the fares charged passengers. In this case the certificate was issued to Miller without, according to the relator, such a hearing, and without the making of any such order. So far as material, § 4 is as follows:

"'. . . The Commission shall have power, after hearing, when the applicant requests a certificate to operate in a territory already served by a certificate holder under this act, only when the existing auto transportation company or companies, serving such territory will not provide the same to the satisfaction of the Commission, . . .' [Rem. Comp. Stat., § 6390.]

"As we read it, the contention of the relator must be sustained, if, as a matter of fact, Miller Station is 'territory already served by a certificate holder.'

"This question of fact must also be resolved in favor of the relator. As we have noted, the relator maintains a service from 5 o'clock in the morning until 1 o'clock of the following morning, daily, passing within one hundred yards of the street car terminus, and four times during the day it goes directly through the station in question. Certainly this would constitute Miller Station 'territory already served' within the act.

"The questions of whether the service is adequate, or whether the rates charged by relator are proper, are questions which, under the law, the relator is entitled to a hearing upon, and it is only after a hearing and an order entered directing the relator to change its schedule or rates, and a refusal by the relator to obey that order, that respondents have power to issue a certificate to some other person to then inaugurate a new service."

Our later decisions in *Yelton & McLaughlin v. Dept. of Public Works*, 136 Wash. 445, 240 Pac. 679, *State*

*ex rel. Krakenberger v. Dept. of Public Works,* 141 Wash. 168, 250 Pac. 1088, and *North Coast Trans. Co. v. Dept. of Public Works,* 157 Wash. 79, 288 Pac. 245, support this conclusion.

It is strenuously argued that the route between Seattle and Manitou Beach, over which the service of the sound company is proposed to be rendered, is a proposed service into territory not already served. We cannot agree with this contention. The route proposed to be followed is almost identical with that already followed by the passenger and freight boat service rendered by the Kitsap company. It is true that the Kitsap company has not as yet furnished any vehicle ferry service over that route, but it has furnished and is furnishing freight and passenger service practically over that route. That may be a deficient service, in that it is not required ferry vehicle service over that route; but the territory is served, directly as to freight and passengers, and indirectly as to ferry vehicle service by the Seattle-Port Blakely ferry.

It seems to us, under all the circumstances, that it must be decided, as a matter of law, that the territory is already served by the Kitsap company. If that service be deficient, let such deficiency be defined by the department and ordered corrected accordingly, after due hearing, as the law contemplates.

The order of the department awarding a certificate to the sound company is reversed.

TOLMAN, C. J., MAIN, BEALS, HOLCOMB, and HERMAN, JJ., concur.

MITCHELL, J. (dissenting)—The reasons given for the opinion concurring in part in the majority opinion in *North Bend Stage Line, Inc., v. Department of Public Works, ante* p. 217, 16 P. (2d) 206, are in all respects applicable here, which necessitate, in my opinion, a

406

dismissal of this proceeding for the lack of jurisdiction.

MILLARD and STEINERT, JJ., concur with MITCHELL, J.