[No. 13724-4-III.    Division Three.    March 26, 1996.]

SUPERIOR REFUSE REMOVAL, INC., *Appellant*, v. THE
WASHINGTON UTILITIES AND TRANSPORTATION
COMMISSION, ET AL., *Respondents.*

*Boyd A. Hartman*, for appellant.

*Jack R. Davis* and *Davis, Baldwin & Haffner*; and *Christine O. Gregoire, Attorney General*, and *Steven W. Smith, Assistant*, for respondents.

THOMPSON, J. — Superior Refuse Removal, Inc. (Superior) appeals the superior court order affirming the Washington Utilities and Transportation Commission's (Commission) denial of its application for a certificate of public convenience and necessity. The certificate would have allowed it to provide garbage collection services to commercial businesses in the City of Yakima (City), in competition with Yakima Valley Disposal, Inc. (YVD) the current carrier.[1] Superior contends the Commission's findings and conclusions on the issue of its satisfaction with YVD's service are clearly erroneous. Superior also questions whether the Commission (1) impermissibly relied upon evidence of YVD's service after the date of Superior's application, and (2) incorrectly assumed the Legislature approved the creation of monopolies in the solid waste disposal industry. We affirm.

The instant appeal is the second in this case. Superior applied for a certificate in March 1987. Under former RCW 81.77.040, a garbage collection company must obtain a certificate of "public convenience and necessity" from the Commission before beginning service. If a certificated company already serves the territory in question, the Commission has the authority to grant the application "only if the existing . . . collection company . . . serving the terri-

---

[1] YVD's certificate authorizes it to serve commercial customers in the City and also in Yakima County. YVD protested Superior's application, and it appeared both in superior court and here as a respondent.

tory will not provide service to the satisfaction of the commission." RCW 81.77.040.[2]

An administrative law judge, on behalf of the Commission, conducted a hearing on Superior's application. At the hearing, Superior called YVD customers who testified about various complaints they had with YVD's service. Some of these customers reported problems with dirty, unsightly refuse containers and with spillage from those containers. While the customers hypothesized the spillage occurred during YVD's refuse pickup, they admitted part of it was caused by factors such as wind. Several customers also testified they needed more frequent pickup service. Some called YVD's office with these complaints; others did not. The customers who called YVD were not always satisfied with YVD's response. YVD presented customers' testimony at the hearing, as well. These witnesses were satisfied with YVD's service.

Corey Weedman is the manager and president of YVD. He testified that overfilling of containers causes spillage in the pickup area. In such situations, YVD suggests the customer use larger containers or more frequent pickup; both are available for an increased fee. YVD replaces 20 to 30 containers and boxes each month. Mr. Weedman contacted the witnesses who testified on Superior's behalf and replaced the boxes of those who complained about their appearance. YVD also cleans containers for a fee. Rick Cortez, the Commission's Region 3 Manager, stated YVD customers had filed only two service complaints since 1984.

Witnesses for Superior also testified about tariff and administrative regulation violations by YVD. The alleged violations included:

(1) YVD overcharged its customers by passing through dump fee increases for 1981, and 1983-86 without filing for a

---

[2]The Legislature amended RCW 81.77.040 after Superior filed its application. The standard of "service to the satisfaction of the commission" remains the same.

rate change, in violation of RCW 80.28.050 and .080, and WAC 480-70-240.

(2) YVD charged commercial accounts extra for use of a tandem axle truck required for weight in excess of 27,000 pounds, non-compacted waste, even when the waste in question was compacted.

(3) The company used 13 yd., 20 yd., and 36 yd. containers without a tariff rate for those sizes.

(4) It did not comply with WAC 480-70-240, which requires disposal companies to itemize on customer billings, tonnage collected and disposed of in drop box service.

(5) YVD charged late fees for bills after 15 days, in violation of its tariff, which prohibited such charges unless the account was delinquent at the time of the next billing period.

In response, Mr. Weedman stated the increased assessments for drop boxes were attributable to fee increases by the landfill and did not result in a profit to YVD. Mr. Weedman said he did not know the Commission required the carrier to amend its tariff to reflect fee increases when the carrier did not benefit financially from the pass-through charges. After Mr. Weedman became aware of the need for a tariff change, he sought and received an increased tariff effective July 31, 1987. He offered refunds to the witnesses who complained of the overcharges. Mr. Weedman also testified that YVD recently made a computer change to prevent automatic assessment of late charges on billings sent to one of the witnesses. The vast majority of the other alleged tariff violations involved clerical and/or computer input errors, or did not result in a financial detriment to the customer.

Following the hearing, the administrative law judge issued a proposed order granting Superior's application. The Commission rejected the proposed decision. It held that YVD's service and tariff related problems were not egregious and did not justify the grant of a certificate to Superior. In so holding, the Commission interpreted "service to [its] satisfaction" as used in RCW 81.77.040 to mean "the garbage must be collected on time and regularly."

Superior appealed the Commission's decision to the superior court, which affirmed. It then appealed to this court. We reversed and remanded for entry of findings on additional factors relevant to the determination of whether an existing company will provide "service to the satisfaction of the commission." *Superior Refuse Removal Corp. v. Utilities & Transp. Comm'n*, 60 Wn. App. 1081 (unpublished opinion, No. 10546-6-III, filed April 23, 1991). Our opinion held at pages 6-7 that the standard applied by the Commission, i.e., regular and on schedule service, was "overly simplistic." We instructed the Commission to consider: (1) the nature, the seriousness and pervasiveness of complaints, (2) the existing carrier's response to complaints, (3) the carrier's demonstrated ability to resolve them to the Commission's satisfaction, and (4) its history of compliance with regulation, with special attention to the carrier's cooperativeness on matters central to regulation in the public interest. These factors are drawn from the Commission's orders in *In re R.S.T. Disposal Co.*, and *In re Seattle Disposal Co.*, Utils. & Transp. Comm'n, Order M.V.G. No. 1402, Hearing No. GA-845 and GA-851, ¶¶ 9 and 10, at 17 (1989).

This court also noted at note 4, page 8 of the opinion that the Commission's order stated the appropriate test period for determining whether YVD was providing satisfactory service was the period prior to the filing of Superior's application. Nevertheless, the Commission appeared to consider YVD's postapplication endeavors in its findings. We suggested the Commission clarify "whether there has been an extension of the *DiTommaso*[3] standard to include consideration of post-application conduct as contrasted to conduct prior to Superior's application."

On remand, the Commission reiterated that the test period for determining satisfactory service was prior to the filing of the application. It again denied Superior's application, finding YVD's service under its certificate was

---

[3]*In re Anthony J. DiTommaso d/b/a DiTommaso Bros. Garbage Serv.*, Utils. & Transp. Comm'n, Order M.V.G. No. 795, Hearing No. GA-508 (1975).

satisfactory. Specifically, the Commission found there were no widespread service failures; the evidence did not show a substantial proportion of YVD's 1,300 customers experienced serious problems with the quality of the service; complaints about the condition of equipment and cleanliness were either not serious or the conditions were not carrier-caused; and there had not been a repeated failure by YVD to respond to customer complaints, or an unwillingness by YVD to resolve complaints to the Commission's satisfaction. The Commission determined YVD's tariff violations were not knowing and that YVD had corrected overbillings.[4] The superior court affirmed the Commission's decision, and Superior has appealed.

■ First, Superior challenges the Commission's findings and conclusions as clearly erroneous in light of the evidence of YVD's service deficiencies and tariff violations.

Our review of the Commission's decision is governed by former RCW 34.04.130(6), which provides the court on appeal may reverse an administrative decision if it violates the constitution, is affected by error of law, or is clearly erroneous in view of the entire record, or arbitrary and capricious.[5] A decision is clearly erroneous if the reviewing court is " 'left with [a] definite and firm conviction

---

[4]The Commission's Finding 15 reads: "There have not been widespread or serious service failures; the evidence does not demonstrate that a large number, or a substantial proportion, of the existing carrier's 1300 customers have experienced similar serious problems with the quality of the physical service provided, pickup of waste has been regular and on schedule, and complaints regarding the condition of equipment and cleanliness are either not serious or not shown to be carrier-caused. Although a few customers expressed dissatisfaction with the existing carrier's responsiveness to complaints, there has not been a repeated failure to respond to customer complaints, no[r] an inability or unwillingness to resolve complaints to the Commission's satisfaction. There have not been repeated and knowing violations of Commission laws and regulations; a failure to itemize billings during a period of several months was due to a computer change-over and was corrected by the carrier, and excess charges assessed to customers were pass-through charges attributed directly to increased landfill charges, and the carrier did not benefit financially from the overbillings. There have not been repeated failures to correct violations."

[5]The Administrative Procedure Act was amended by LAWS OF 1988, ch. 288. However, the Legislature provided in RCW 34.05.902 that the amended Act applies only to proceedings begun on or after July 1, 1989. Here, Superior filed its application and the administrative hearing took place in 1987.

that a mistake has been committed.' " *Farm Supply Distribs., Inc. v. Utilities & Transp. Comm'n*, 83 Wn.2d 446, 449, 518 P.2d 1237 (1974) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)).

█ The evidence at the administrative hearing supports the Commission's finding that YVD's alleged service deficiencies were not widespread. Only two customers filed written complaints with the Commission. The Commission legitimately discounted the complaints aired at the hearing by the fact many of them could have been remedied by the customer agreeing to pay for a larger container or more frequent service. YVD may not have clearly conveyed the existence of such a remedy to complaining customers, but the evidence does not compel a finding that YVD's response was wholly inadequate.

YVD's tariff violations are less susceptible to point-of-view differences than are the service deficiencies related by various customers. It is undisputed that YVD passed through landfill drop-box charges without amending its tariff, incorrectly charged an excess tonnage rate in some cases, and did not itemize its bills to show these charges. The Commission characterized those violations as not willful and also considered the fact YVD did not profit from the violations. Mr. Weedman's testimony supports those findings, which, in turn, support the Commission's conclusion YVD's service is satisfactory.

█ Superior argues YVD's tariff violations, whether or not intentional, prevent a conclusion YVD performed satisfactorily. But RCW 81.77.040's standard is not strict liability; it is "service to the satisfaction of the commission." Charging higher rates to increase the carrier's profit margin is different from mistakenly passing through third-party fees to customers. While both are subject to the Commission's regulatory authority, the Commission is more likely to approve a tariff change for pass-through fees, which are clearly traceable to an additional cost to the

carrier, than for a general rate increase, which may be based upon factors which are harder to measure.[6]

Superior also assigns error to the Commission's Finding 6, which states: "Under the proposed service, applicant plans to operate each day of the week between 8:00 a. m. and 5:00 p. m. in order to provide service at various times when needed." Superior argues this finding is incorrect and should have stated Superior would offer weekend and holiday service. The Commission points out the finding says Superior will offer service everyday *of the week*, not everyday of the Monday through Friday work week. The finding is supported by the record.

Finally, Superior disputes the following statement contained in Finding 13: "Mr. Weedman testified that [YVD] has made an input into its computer to prevent automatic assessment of late charges . . . ." Superior cites its cross-examination of Mr. Weedman at the hearing:

> Q. Okay, now. Mr. Ronning of Cascade Truss was also a witness and you testified that I believe that the billing period was one of the complaints. Did you say that some action was taken by that so he wasn't given a late charge?
>
> A. Yes.
>
> Q. And did you give that identical to all other customers that you bill?
>
> A. No.

Superior contends YVD assessed more than one or two customers improper late charges, and Mr. Weedman admitted in the testimony quoted above that his company

---

[6]Superior argues the Commission has in the past imposed a strict liability standard and that its failure to do so here violates Superior's right to due process. It cites the Commission's order in *DiTommaso*, Order M.V.G. No. 786; Hearing No. GA-508, at p. 25 (1975). That order concluded the carrier "failed to provide reasonably adequate service . . . and it is strictly liable *for this failure* under the provisions of the Commission's order . . . ." (Emphasis added.) Superior misconstrues *DiTommaso*. That order did not hold the carrier was strictly liable for any and all deficiencies. Rather, it held the carrier was strictly liable to provide reasonably adequate service. In the same sense, if the Commission here had found deficiencies in YVD's service such that it rendered that service unsatisfactory, then YVD would be strictly liable therefore.

had not ceased this practice. However, the record does not mandate Superior's inference that because one customer was assessed a late fee before the end of his billing period, YVD assessed all its customers the same improper charge. Again, the evidence does not compel a finding of unsatisfactory service.

In summary, our review of the record does not leave us with a "definite and firm conviction that a mistake has been committed.' " *Farm Supply*, 83 Wn.2d at 449 (quoting *United States Gypsum*, 333 U.S. at 395). The Commission's findings are not clearly erroneous.

Second, Superior argues the Commission improperly considered YVD's remedial actions, even though its order states the period for determining whether YVD provided satisfactory service is the date of Superior's application.

██ The time period for judging whether the current carrier provides satisfactory service is the date of the application. *In re Anthony J. DiTommaso d/ b/ a/ DiTommaso Bros. Garbage Serv.*, Order M.V.G. No. 795, Hearing No. GA-508, at 7 (1975); *In re Brem-Air Disposal, Inc.*, Order M.V.G. No. 855, Hearing No. GA-575 (1976). The Commission agrees that period is the applicable period, but opposes Superior's assertion it considered YVD's remedial acts as a basis for finding YVD's service satisfactory. The Commission's decision supports its position. While the findings recognize that YVD contacted Superior's witnesses and attempted to address their complaints, the Commission specifically found the service-related complaints were not serious. The Commission's treatment of YVD's tariff violations likewise did not rely upon YVD's bringing itself into compliance. Rather, the Commission relied upon evidence the violations were unintentional and did not benefit YVD. So viewed, the violations did not require a conclusion YVD's service was unsatisfactory. In situations in which the carrier is not providing satisfactory service on the date the applicant files for a competing certificate, the carrier's subsequent remedies cannot change that fact. But here, the Commission determined

YVD's service deficiencies and tariff violations were not serious, and YVD was performing satisfactorily on the date of Superior's application.

Third, Superior asserts the Commission based its decision upon an erroneous interpretation of RCW 81.77.040, i.e., that the statute expresses a legislative intent to foster monopolies in the solid waste collection industry.

Near the beginning of the Commission's order, it sets out the standard it uses in reviewing applications for authority to operate. It states:

> The Legislature in enacting RCW 81.77 was reluctant to permit overlapping authorities in the collection and disposal of solid waste. Statutory language requires that if the territory in question is already being served, an applicant must prove that the existing carrier will not serve the territory to the satisfaction of the Commission.

Superior argues this statement indicates the Commission incorrectly believed the Legislature authorized formation of monopolies in the area of solid waste collection and disposal. Since monopolies are illegal unless expressly authorized by the Legislature, *In re Consolidated Cases*, 123 Wn.2d 530, 536-37, 869 P.2d 1045 (1994), Superior concludes the basis of the Commission's decision is faulty.

Superior's argument is not persuasive. The Commission did not deny Superior's application because YVD already provided service inside the City. It denied the application because YVD was providing satisfactory service. The Commission applied the correct standard in turning down Superior's application.

Superior cites *In re Sharyn Pearson*, Order M.V.C. No. 1978, Hearing No. D-75018 (1992), and *In re San Juan Airlines*, Order M.V.C. No. 1809, Hearing No. D-2566 (1989). Both cases are distinguishable. The material issue here is whether YVD's service is satisfactory. In *Sharyn Pearson*, the issue was whether there existed good cause to deny the applicant a certificate, even though the existing service was unsatisfactory. The carrier presented evi-

dence competition would jeopardize its ability to continue service in another territory which the applicant did not propose to serve. In *San Juan Airlines*, the issue was whether the territory for which the applicant sought a certificate was a "territory already served" within the meaning of the applicable statute. Neither case supports the argument the Commission's application of the standard of "service to [its] satisfaction" creates illegal monopolies in the field of solid waste disposal.

Affirmed.[7]

SWEENEY, C.J., and SCHULTHEIS, J., concur.

---

[7]YVD has moved to strike Superior's second revised appendix to its reply brief. The motion is denied.