[No. 20606-4-II. Division Two. July 17, 1998.]

PACIFIC NORTHWEST TRANSPORTATION SERVICES, INC., *Appellant*, v. THE UTILITIES AND TRANSPORTATION COMMISSION, ET AL., *Respondents*.

*Clyde H. MacIver* of *Miller, Nash, Wiener, Hager & Carlson*; and *David J.W. Hackett*, for appellant.

*Jack R. Davis* of *Davis & Baldwin*; and *Christine O. Gregoire, Attorney General*, and *Shannon E. Smith, Assistant*, for respondents.

MORGAN, J. — RCW 81.68.040 governs the intrastate transportation of passengers for compensation. It provides in pertinent part:

> No auto transportation company shall operate for the transportation of persons . . . for compensation between fixed termini or over a regular route in this state, without first having obtained from the [Washington Utilities and Transporta-

tion Commission] under the provisions of this chapter a certificate declaring that public convenience and necessity require such operation . . . . The commission shall have power, after hearing, when the applicant requests a certificate to operate in a territory already served by a certificate holder under this chapter, only when the existing auto transportation company or companies serving such territory will not provide the same to the satisfaction of the commission, and in all other cases with or without hearing, to issue said certificate as prayed for; or for good cause shown to refuse to issue same, or to issue it for the partial exercise only of said privilege sought, and may attach to the exercise of the rights granted by said certificate to such terms and conditions as, in its judgment, the public convenience and necessity may require.

Like the parties, we refer to "a certificate to operate in a territory already served by a certificate holder" as an overlapping certificate, and to "the existing auto transportation company" as the incumbent carrier.

Seattle-Tacoma International Airport (Sea-Tac) is located in King County. South of King County is Pierce County, and south of Pierce County is Thurston County. Pierce County includes the city of Tacoma, and Thurston County includes the city of Olympia.

For many years, Pacific Northwest Transportation Services, d/b/a/ Capital Aeroporter (Capital), has operated an airporter (van) service between Sea-Tac, on the one hand, and Pierce and Thurston Counties, on the other. It has operated under a certificate of authority issued by the Washington Utilities and Transportation Commission (WUTC). Although its certificate allowed it to serve Thurston County directly (i.e., without stopping in Pierce County), it has always made its Thurston County service subject to intermediate stops in Pierce County.

On December 1, 1992, Sharyn Pearson and Linda Zepp, d/b/a/ Centralia-Seatac Airport Express (Centralia), applied to the WUTC for a certificate permitting them to provide direct airporter service between Thurston County and the airport (i.e., service without intermediate stops in Pierce

County).[1] A hearing was held before an administrative law judge (ALJ) on May 24 and July 8, 1993. Four Thurston County users testified that Capital's service failed to meet their needs because of the unpredictability and delay caused by intermediate stops in Pierce County.

On November 12, 1993, the ALJ proposed an order granting Centralia's application. When Capital petitioned the Commission, however, that body rejected the ALJ's proposed order and denied Centralia's application. Centralia then sought reconsideration on grounds the Commission had "erred in its evaluation of [Capital's] service; erred in its evaluation of [Centralia's] proposal; gave insufficient weight to public sentiment for [Centralia's] proposal; and erred in failing to conclude that the public convenience and necessity require the proposed service."[2] The Commission allowed Capital to respond, and Capital filed its response on May 27, 1994. Thereafter, the Commission granted reconsideration and awarded Centralia the requested certificate, finding in part as follows:

Capital Aeroporter does not offer non-stop service between the Olympia area and Sea-Tac Airport. Its service is a scheduled door-to-door airporter service that makes twelve runs daily from Olympia to Sea-Tac. Each of its northbound runs makes at least one stop in Tacoma, at the Sheraton Hotel, and makes as many additional door-to-door stops in Pierce County as the carrier has reservations.

There is ample evidence that the airporter service that Capital Aeroporter offers in Thurston County is not as direct, expedited, or convenient as the traveling public in the territory expects and desires of airporter service. Four Thurston County witnesses who use and/or arrange for airporter service between the Olympia area and Sea-Tac Airport expressed dissatisfaction with the lack of non-stop service to the airport. The testimony demonstrates that travelers experience anxiety

---

[1]Pearson and Zepp also sought authority to transport people from Lewis County to the airport without intermediate stops in Pierce County. That part of their application is not in issue on this appeal.

[2]Clerk's Papers at 287.

and discomfort when a Capital Aeroporter van wanders around the Tacoma area picking up passengers, particularly when the time for getting to the airport is short. The testimony demonstrates that Olympia-area airporter travelers desire a non-stop or "express" service to Sea-Tac.

James Fricke, Capital Aeroporter's operating witness, admitted receiving passenger complaints about too many stops on the way to the airport. A former driver for Capital Aeroporter, Robert Hastings, testified that the most common complaint he heard from Capital's passengers was "I wish there were something that did not stop in Tacoma and went straight to the airport."

The Commission believes that non-stop airporter service for which the Thurston County public witnesses expressed a need is a reasonable service expectation. The Thurston County territory that Capital Aeroporter serves is not a sparsely settled area whose residents are fortunate to have any form of public transportation to the major airport serving the region. It is one of the state's major population centers. It is the seat of state government. Absent convincing evidence that it is not economically feasible to provide direct, expedited service between the Olympia area and Sea-Tac Airport,[3] the Commission will conclude that Capital Aeroporter's failure to offer such service makes its service not to the satisfaction of the Commission.[4]

Capital appealed from the Commission to the superior court, which affirmed. Capital then filed the present appeal to this court. As both parties acknowledge, we review the

---

[3]The Commission expressly found an absence of such evidence. It stated:

Capital Aeroporter contends that it is not economically feasible for it to offer non-stop service between the Olympia area and Sea-Tac at airporter rates. Testimony to that effect comes only from Capital Aeroporter's operating witness, and is self-serving. There is no persuasive evidence in the record to support a finding that the non-stop service the public desires would not be economically feasible.

Clerk's Papers at 290.

[4]*Id.*

decision of the Commission, as opposed to the decision of the superior court.[5]

██ Expressly claiming that it is raising issues of law only,[6] Capital argues that "the Commission exceed[ed] its power under RCW 81.68.040 by (1) adopting a new standard for satisfactory service after issu[ing] its Final Order, and then (2) granting overlapping operating authority to Centralia Airporter without making the threshold determination that the incumbent carrier 'will not' offer service to meet the new standard."[7] Capital does not assign error to the Commission's findings, and thus they are verities on appeal.[8]

## I.

In making its first argument, Capital does not clearly identify the "standard" that it claims was previously in effect, or the "standard" which it alleges the Commission "changed." As best we can discern, Capital is attempting to assert that the Commission's previous "standard" was service between Thurston County and the airport with intermediate stops in Pierce County, while the Commission's present "standard" is service between Thurston County and the airport without such intermediate stops.

██ Assuming these are Capital's assertions, it is misidentifying the applicable standard. The standard established by RCW 81.68.040 is service "to the satisfaction of

---

[5]*Waste Management of Seattle v. WUTC*, 123 Wn.2d 621, 632-33, 869 P.2d 1034 (1994); *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993); *In re Montell*, 54 Wn. App. 708, 711, 775 P.2d 976 (1989).

[6]In its reply brief, Capital says, "The current appeal is governed primarily by RCW 34.05.570(3)(b) & (d)—the lack of authority and error of law standards." Reply Br. of Appellant at 1. According to those statutory subsections, a court may grant relief from an agency order in a quasi-adjudicative proceeding only if the court determines that "(b) [t]he order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law," or that "(d) [t]he agency has erroneously interpreted or applied the law."

[7]Br. of Appellant at 3.

[8]*Levine v. Jefferson County*, 116 Wn.2d 575, 581, 807 P.2d 363 (1991); *Nearing v. Golden State Foods Corp.*, 114 Wn.2d 817, 818, 792 P.2d 500 (1990).

the Commission." That standard was in effect at all times material to this case, and it was never changed by the Commission. The Commission's determination to allow service between Thurston County and the airport, with intermediate stops in Pierce County, is a result of *applying* the standard, but not the standard itself. Similarly, the Commission's determination to allow service between Thurston County and the airport, without intermediate stops in Pierce County, is a result of *applying* the standard, but not the standard itself. Capital's first argument fails.

## II.

Turning to Capital's second argument, we note at the outset that the parties do not dispute that Capital is entitled to be regarded as an incumbent carrier. Nor do they dispute that the Commission can grant an overlapping certificate only if it finds the incumbent carrier's service is deficient in the sense of not satisfying the Commission. The dispute is over the methods the Commission may use when determining whether an incumbent carrier's service is deficient or satisfactory.

Capital's starting point, appropriately enough, is the language of the statute. As already seen, that language states that the Commission may grant an overlapping certificate "only when the existing auto transportation company . . . serving such territory *will not provide* [service] to the satisfaction of the commission."[9]

Emphasizing that the Legislature used the words "will not provide," rather than the words "is not providing," Capital contends that the Commission may not grant an overlapping certificate merely because an incumbent's service has been unsatisfactory in the past, or even because an incumbent's service is unsatisfactory at present. Rather, Capital says, the Commission may grant an overlapping certificate only if it finds that the incumbent's service, no matter how bad previously or presently, will be unsatisfac-

---

[9]RCW 81.68.040 (emphasis added).

tory *in the future*. Neither Centralia nor the Commission seems to dispute this proposition, so we assume, without so holding, that it is correct.[10]

Having demonstrated at least arguendo that the Commission must evaluate an incumbent's *future* service, as opposed to its past or present performance, Capital goes on to contend that the Commission is prohibited from evaluating an incumbent's future service by drawing an inference based on the incumbent's past or present performance. Instead, Capital says, the *only* way in which the statute allows the Commission to evaluate an incumbent's future service is (a) to notify the incumbent of the service improvements that the incumbent must make if the Commission is not to deem itself dissatisfied, and (b) to provide a prospective period of time within which the incumbent may perform (or fail to perform) those improvements.

 We reject this restrictive view of how the Commission may proceed. Instead, we hold that the Commission, when called upon to evaluate the future, may do so in any rational way that the evidence will support. In other words, the Commission may infer an applicant's future conduct from his or her past conduct, or, alternatively, proceed in any other rational way that the evidence will support.

We reject Capital's argument for several reasons. First, it is untenable from the standpoint of logic and reasonableness. In virtually all aspects of life, one may estimate another's future conduct not only by observing it when it occurs, but also by drawing an inference, before it occurs, from past conduct of the same kind.[11]

Second, the argument is also untenable from the standpoint of the language used by RCW 81.68.040. The statute states that the Commission may grant an overlapping cer-

---

[10]*But see Superior Refuse Removal, Inc. v. WUTC*, 81 Wn. App. 43, 51, 913 P.2d 818 (1996) (when incumbent "is not providing satisfactory service on the date the applicant files for a competing certificate," the incumbent's subsequent remedial actions "cannot change that fact").

[11]The law provides many examples, including but not limited to injunctions and the reliability of witnesses.

tificate only if it finds that the incumbent "will not provide [service] to the satisfaction of the commission." The statute does not specify how the Commission is to make that determination. Indeed, on its face it would seem to give the Commission discretion to assess an incumbent carrier's future conduct in any logical and reasonable way supported by the evidence.

Third, the argument is untenable from the standpoint of maximizing benefits to the public. The public is benefited by an incumbent carrier being motivated to improve its service, but Capital's argument, if accepted, would eliminate or reduce any such motivation. For precisely this reason, the Commission has ruled that it will gauge an incumbent's future performance by examining the service the incumbent was rendering *before* the filing of an application for an overlapping certificate. As the Commission stated in proceedings between these same parties:

> There is evidence that Capital Aeroporter made improvements in its telephone accessibility, timely performance, delivery of schedules, frequency of service, and solicitation of business during the months immediately before the hearing. Capital Aeroporter contends that its service improved before it received notice of this application, although admittedly after the application was filed. Capital Aeroporter contends that the proper test period for the Commission to examine for determining the quality of service the company will provide should run through the date the company received actual notice of the application.

> The Commission reaffirms its consistent position that service improvements occurring after the filing of a competing application will not be considered in determining whether the existing carrier's service is satisfactory. Without a rule barring consideration of the existing carrier's post-application service improvements, existing carriers would have little incentive to provide satisfactory service until they are challenged by a potential competitor and potential competitors would have little incentive to challenge a carrier who is providing poor or mediocre service. *See*[] Order M.V.G. No. 795, *In re Anthony DiTommaso[,] d/b/a Tommaso Bros. Garbage Service*, App. No.

GA-508 (November 1975); Order S.B.C. No. 490, *Clipper Navigation, Inc. v. Puget Sound Express, Inc.*, Docket No. TSS-900977 (February 1992).[12]

Fourth, the argument is also untenable from the standpoint of modern case authority. In *Superior Refuse Removal, Inc. v. WUTC*,[13] the incumbent apparently made service improvements after the date on which a would-be competitor applied for an overlapping certificate. Responding to the competitor's contention that this was improper, Division Three said:

> The time period for judging whether the current carrier provides satisfactory service is the date of the application. *In re Anthony J. DiTommaso d/b/a/ DiTommaso Bros. Garbage Serv.*, Order M.V.G. No. 795, Hearing No. GA-508, at 7 (1975); *In re Brem-Air Disposal, Inc.*, Order M.V.G. No. 855, Hearing No. GA-575 (1976). The Commission agrees that period is the applicable period, but opposes Superior's assertion it considered [the incumbent's] remedial acts as a basis for finding [the incumbent's] service satisfactory. The Commission's decision supports its position.[14]

To the extent Division Three considered the matter, it seems to have said or assumed that the Commission could infer the future from the past, although the Commission could not use the incumbent's remedial acts performed after the date of the competitor's application.

Attempting to support its argument, Capital relies primarily on a series of cases from the 1920's. The genesis case appears to be *State ex rel. United Auto Transport Company v. Department of Public Works*,[15] wherein the WUTC's predecessor, the Department of Public Works, granted an overlapping certificate without giving the

---

[12]Order M.V.C. No. 1978, *Sharyn Pearson & Linda Zepp, d/b/a Centralia/ Seatac Airporter Express*, App. No. D-75018 (Sept. 1992), at pages 5-6; Clerk's Papers at 305-06.

[13]81 Wn. App. 43, 913 P.2d 818 (1996).

[14]*Id.* at 51.

[15]119 Wash. 381, 206 P. 21 (1922).

incumbent carrier a hearing. The incumbent appealed, and the Supreme Court reversed. In the words of the court, the incumbent "is entitled to a hearing upon [the adequacy of service], and it is only after a hearing and an order entered directing the [incumbent] to change its schedule or rates, and a refusal by the [incumbent] to obey that order, that [the Department has] power to issue a certificate to some other person to then inaugurate a new service."[16]

■ As Centralia correctly points out, *United Auto* lacks precedential effect for purposes of the case at bar. The question in *United Auto* was whether the Department of Public Works must give an incumbent carrier a hearing before granting an overlapping certificate.[17] The Supreme Court answered yes. Its comment on the question of how the Department could evaluate the incumbent's service—the court said the Department could direct the incumbent to provide satisfactory service, then wait and see if the incumbent obeyed or refused to obey its order—was unnecessary to the decision, which was to reverse for lack of a hearing. Because the comment was nonbinding dictum,[18] it does not affect the methods by which the Commission may determine, in the 1990s, whether an incumbent's service is deficient or satisfactory.

■ Even if *United Auto* were not dictum, the Supreme Court subsequently declined to apply it in cases where, as in the case at bar, the applicant seeks to provide a through service that is subject to fewer delays than the service provided by the incumbent carrier. In *North Bend Stage*

[16]*United Auto*, 119 Wash. at 383. The court later quoted this language in *Kitsap County Transp. Co. v. Department of Pub. Works*, 170 Wash. 396, 404, 16 P.2d 828 (1932).

[17]This of course is not a question here, where a full hearing was held.

[18]*See State v. Pawlyk*, 115 Wn.2d 457, 487, 800 P.2d 338 (1990) ("statements 'not necessary to the decision of any issue in the . . . case' are dicta which do not control future cases") (quoting *Gilmour v. Longmire*, 10 Wn.2d 511, 516, 117 P.2d 187 (1941)); *Marriage of Roth*, 72 Wn. App. 566, 570, 865 P.2d 43 (1994) (dictum is language not necessary to the decision) (citing *Pedersen v. Klinkert*, 56 Wn.2d 313, 317, 320, 352 P.2d 1025 (1960)); *Plankel v. Plankel*, 68 Wn. App. 89, 92, 841 P.2d 1309 (1992) (rationale not necessary to the decision is nonbinding dicta).

*Line v. Denney*,[19] the court seemed to say that *United Auto* would govern only those cases in which "[t]he territory served was extremely limited."[20]

In addition to *United Auto*, Capital relies on *Kitsap County Transportation Company v. Department of Public Works*.[21] That case, however, is easily distinguishable. The question there was whether Kitsap County Transportation (KCT) was already serving the territory in issue (or, in alternative terms, whether KCT was entitled to be regarded as an incumbent carrier). After resolving that question in KCT's favor, the court remanded to the WUTC's predecessor, the Department of Public Works, for a determination on whether KCT's service was "deficient."[22] The court did not consider or discuss the methods the Department was permitted to use when determining whether an incumbent carrier's service is satisfactory or deficient.[23]

In addition to *United Auto* and *KCT*, Capital relies on *State ex rel. Krakenberger v. Department of Public Works*.[24] In that case, however, the Supreme Court ruled only that "abundant evidence" supported the Department's determination that the incumbent's service was satisfactory.[25] The court did not consider or address the question presented here, which is whether the WUTC is barred from looking at an incumbent's *past* performance when determining

---

[19]153 Wash. 439, 279 P. 752 (1929), *aff'd*, 283 U.S. 786 (1931).

[20]*North Bend*, 153 Wash. at 446.

[21]170 Wash. 396, 16 P.2d 828 (1932).

[22]*Kitsap County*, 170 Wash. at 405.

[23]Capital also relies on *Pacific Northwest Traction Company v. Department of Public Works*, 151 Wash. 659, 276 Pac. 566 (1929), which is distinguishable for the same reason as *Kitsap*. The question there, as in *Kitsap*, was whether the appellant was entitled to be regarded as an incumbent; or, in the words of the court, whether the appellant "was, when it made its application for a certificate over the new highway, serving the territory which would be served under the new certificate." *Pacific NW*, 151 Wash. at 662. The court did not address whether the appellant was providing (or would provide) satisfactory or deficient service, and that is the question here.

[24]141 Wash. 168, 250 P. 1088 (1926).

[25]*Krakenberger*, 141 Wash. at 170.

whether the incumbent's *future* performance will be satisfactory or deficient.

Leaving the cases, we briefly examine the concurrence. It states that the Commission may properly infer a carrier's future performance solely from the carrier's past conduct when the case involves "a known qualitative standard of performance such as safety, cleanliness, or efficiency,"[26] but not when the case involves "a new type of service, one not required previously."[27] In *all* cases of the latter type, the concurrence would hold, "evidence of past service alone is insufficient to determine the incumbent's willingness to provide the new service in the future."[28]

We decline to embrace this proposed distinction for several reasons. First, it represents too narrow a view of human affairs. A rational tribunal such as the Commission can sometimes, though certainly not always, find solely from an actor's past performance of one service, how the actor will perform a different service in the future. It simply is not true, as a matter of law or human affairs, that an actor's previous performance of one service is *automatically* an insufficient basis from which to determine how that actor will perform a different service in the future.

Second, the proposed distinction improperly intrudes on the discretion of the Commission. When the legislature vested the Commission with discretion to find the facts pertaining to matters before it, it vested the Commission with discretion to draw reasonable inferences from the record, and to decide whether such inferences satisfy the applicable burden of persuasion. It did *not* vest appellate courts like this one with the authority to prohibit, on an automatic or *per se* basis, a result that is otherwise supported by the record.

Third, the proposed distinction is vague and hence unworkable. It has no statutory basis, and even the concur-

---

[26]Concurrence at 603-04.

[27]*Id.* at 604.

[28]*Id.*

rence does not set forth any nonstatutory standards that the Commission could use when attempting to segregate one type of case from the other. A better approach is the time-tested, traditional one: The Commission has fact-finding discretion, which it may exercise in any way supported by the record.

Finally, the proposed distinction militates against the public interest. As the Commission has noted, and as we have noted above, the proposed distinction would in some cases leave an existing carrier with "little incentive to provide satisfactory service until . . . challenged by a potential competitor," and a potential competitor with "little incentive to challenge a carrier who is providing poor or mediocre service."[29]

In conclusion, we hold that the Commission did not err in selecting the standard that it applied. We further hold that the Commission was permitted by law (but not necessarily required by law) to gauge the satisfactory or deficient nature of Capital's *future* service by drawing an inference based on its *past* service. Accordingly, we affirm the Commission and the superior court.[30]

HUNT, J., concurs.

SEINFELD, J. (concurring) — I write separately to clarify what I believe to be the majority's misunderstanding of Capital's argument regarding the Commission's change of "standards." Capital is not using the word "standard" in the technical legal context of a "standard of review." Nor does it dispute that the statutory test for the granting of an overlapping certificate is service "to the satisfaction of the Commission." RCW 81.68.040. Rather it uses the word

---

[29]Order M.V.C. No. 1978, *Sharyn Pearson & Linda Zepp, d/b/a Centralia/ Seatac Airporter Express*, App. No. D-75018 (Sept. 1992), at pages 5-6; Clerk's Papers at 305-06. Nothing in the *Superior* case is contrary to the text, for nothing in *Superior* prohibits the Commission from using past performance as a basis, sole or partial, from which to infer future performance.

[30]Capital's remaining arguments lack merit or need not be reached.

"standard" to refer to the qualities the Commission considers when deciding if it is satisfied with the incumbent provider's performance. For example, *see Superior Refuse Removal, Inc. v. Washington Utils. & Transp. Comm'n*, 81 Wn. App. 43, 47, 913 P.2d 818 (1996) ("the *standard* applied by the Commission, i.e., regular and on schedule service, was 'overly simplistic.' " (emphasis added)).

Although standards or qualities related to safety, cleanliness, and timeliness are obvious, a standard related to character of service, such as providing nonstop or "closed-door service," may change with time and circumstances. Capital does not contend that the Commission lacks the authority to revise its standards as circumstances change. Rather, it argues that the language of RCW 81.68.040 requires the Commission to give the incumbent certificate holder an opportunity to satisfy the new standard before granting an overlapping certificate to a new applicant.

The statutory language appears to support Capital's contention. RCW 81.68.040 provides that the Commission may grant an overlapping certificate only when the existing certificate holder *will not* provide satisfactory service. That phrase suggests a knowing refusal to perform in a certain fashion. *See Higgins v. Stafford*, 123 Wn.2d 160, 165, 866 P.2d 31 (1994) (court gives effect to the plain meaning of the language in interpreting a statute). By negative implication, an incumbent's failure to satisfy a service standard of which it is unaware is not evidence of a knowing refusal to satisfy that standard or that the incumbent *will not* provide satisfactory service.

The majority, while agreeing that the Commission must consider the certificate holder's likely future performance, states that it is appropriate for the Commission to gauge this by looking solely to "the service the incumbent was rendering *before* the filing of an application for an overlapping certificate."[31] This approach is logical and reasonable when dealing with a known qualitative standard of perfor-

---

[31]The majority writes approvingly, "[T]he Commission has ruled that it will gauge an incumbent's future performance by examining the service the

mance such as safety, cleanliness, or efficiency. But when the Commission is demanding a new type of service, one not required previously, evidence of past service alone is insufficient to determine the incumbent's willingness to provide the new service in the future. To allow the Commission to rely solely upon past evidence under these circumstances is neither reasonable, logical, nor fair.

The *Superior* case again provides guidance. Superior sought an overlapping certificate to collect garbage in Yakima. It presented evidence that there were customer complaints about the service provided by the then-certificated company serving the territory, YVD. Customers apparently complained about dirty containers, spillage, and the fee structure.

YVD responded with evidence that the spillage was due to customers overfilling their containers, that more frequent pickups were available for a fee, and that it was unaware that the Commission required the amount of tariff to reflect fee increases. When it became aware of the requirement, it obtained approval for an increased tariff.

The Commission denied Superior's application, holding that YVD's problems were not egregious. On appeal, Division Three remanded for consideration of:

> (1) the nature, the seriousness and pervasiveness of complaints, (2) the existing carrier's response to complaints, (3) the carrier's demonstrated ability to resolve them to the Commission's satisfaction, and (4) its history of compliance with regulation, with special attention to the carrier's cooperativeness on matters central to regulation in the public interest.

*Superior*, 81 Wn. App. at 47.

On remand, the Commission again decided it was satisfied with YVD's performance. Superior again appealed, arguing, inter alia, that the Commission improperly considered YVD's remedial action after the date of Superior's application. Although the *Superior* court agreed that

incumbent was rendering *before* the filing of an application for an overlapping certificate." Majority, at 597.

the relevant time period "for judging whether the current carrier provides satisfactory service is the date of the application," it concluded that "the Commission's treatment of YVD's tariff violations . . . did not rely upon YVD's bringing itself into compliance." *Superior,* 81 Wn. App. at 51. Instead, the Commission determined that the tariff violations were unintentional and, thus, did not require a conclusion that the service was unsatisfactory.

Here, as in *Superior,* the essence of Capital's contention is that its violation of a nonstop service standard was unintentional because the standard did not exist until the Commission's hearing on Centralia's motion for reconsideration. One month before Centralia applied for overlapping authority, the Commission entered Order M.V.C. No. 1978 in which it stated that

> The Commission therefore does not consider Capital Aeroporter's failure to provide these services [nonstop between Thurston County and Sea-Tac] to be service that fails to meet the satisfaction of the Commission.

And in its Final Order on Centralia's application, which reversed the administrative law judge, the Commission again indicated that Capital's service was satisfactory.

Nonetheless, I concur in the majority's affirmance of the Commission's Reconsideration Order because it appears that by the time of the hearing, Capital was on notice of the changed standard and indicated that it would not comply. The Commission described Capital's attitude as follows:

> Capital Aeroporter does not provide closed-door service after picking up Thurston County travelers. It makes stops in Tacoma en route to Sea-Tac, and is unwilling to provide closed-door service from Thurston County. Mr. Fricke [operator of Capital Aeroporter] believes that the public as a whole places a higher priority on increased frequency of service than on expedited service, and does not consider it economically feasible to offer a frequent service between Thurston County and Sea-Tac at current rates if additional passengers cannot be picked up in Tacoma.

Capital does not contend that the evidence is insufficient to support this finding as, indeed, it cannot. This finding is supported by Mr. Fricke's testimony and by the following statement in Capital's brief submitted to the Commission:

> Capital Aeroporter has contended in this and in the prior proceeding of Centralia Airporter that it is not economically feasible to provide an airporter service between Thurston County and Sea[-]Tac with no stops in Pierce County given the limited traffic available.

Thus, Capital has been aware of the potential for a new standard since Centralia's first application for overlapping authority and has consistently maintained that such service is not economically feasible. Given this evidence, it is pointless to remand this case and require the Commission to consider whether Capital is willing to provide service under the new standard, as Capital urges. Capital's steadfast refusal to consider nonstop service removes any merit to the suggestion that the Commission lacked a basis to conclude that Capital would not provide satisfactory service in the future.

I concur in the result.