

FILED
COURT OF APPEALS DIV
STATE OF WASHINGTON

2013 SEP 23 AM 8: 56

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JOHN H. THOMAS,                         )       NO. 69252-6-I
                                        )
                    Appellant,          )       DIVISION ONE
                                        )
            v.                          )
                                        )
STATE OF WASHINGTON,                    )       ORDER GRANTING MOTION
DEPARTMENT OF EMPLOYMENT                 )       TO PUBLISH OPINION
SECURITY,                               )
                    Respondent.         )
_____ )

The respondent, State of Washington Department of Employment Security

moved on August 23, 2013, to publish the court's August 5, 2013 opinion. The court

has determined that the motion should be granted. Therefore, it is

ORDERED that appellant's motion to publish opinion is granted.

DATED this 23rd day of September 2013.

FOR THE PANEL:



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOHN H. THOMAS, | ) | NO. 69252-6-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | PUBLISHED OPINION |
| DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY, | ) | FILED: August 5, 2013 |
| Respondent. | ) | |
| | ) | |

LAU, J. — John Thomas appeals from a Washington Employment Security Department commissioner's decision denying his request for unemployment benefits. The commissioner applied RCW 50.44.050 and determined that Thomas, an elementary school lunchroom manager, was ineligible for benefits because he was a school employee who sought benefits during a summer school break period, despite having a reasonable assurance of returning to work at the beginning of the next academic year. Because the commissioner correctly applied the law to the unchallenged factual findings, we affirm.

## FACTS

The facts are undisputed. The Seattle School District hired John Thomas as an elementary school lunchroom manager in January 2008. Thomas's job duties include managing the kitchen, setting out dishes, cooking, cleaning, and handling the kitchen paperwork. Thomas works as a lunchroom manager during the school year, which runs from September to June.

During each spring season in 2008 through 2011, the school district sent letters to lunchroom staff asking them to submit their names if they were interested in summer groundskeeping or custodial work. Each year, Thomas submitted his name for this work. He accepted work as a custodian or groundskeeper during the 2008, 2009, and 2010 summer breaks. Shortly before the 2011 summer break, Thomas learned that the school district did not have a summer position available for him due to budget constraints.

Though the school district did not offer Thomas groundskeeping or custodial work in summer 2011, Thomas knew before the end of the 2010–11 school year that he would be returning to work as lunchroom manager for the 2011–12 school year. He resumed work as a lunchroom manager on September 7, 2011.

Because he had no summer work with the school district, Thomas applied to the Washington Employment Security Department for unemployment benefits in July 2011. The Department denied Thomas's application under RCW 50.44.050(2), the "reasonable assurance" statute.[1] Specifically, the Department denied benefits because

---

[1] As discussed in detail below, this provision denies unemployment benefits

69252-6-I/3

Thomas was a school employee who sought benefits during a school break period, though he had reasonable assurance of returning to work under the same terms and conditions at the beginning of the next academic year.

Thomas appealed the Department's decision and an administrative law judge (ALJ) held a hearing. The ALJ affirmed the Department's denial of benefits. Thomas petitioned the Department's commissioner for review. The commissioner adopted the ALJ's findings of fact and conclusions of law and affirmed the Department's denial of benefits, concluding that under RCW 50.44.050(2), Thomas was ineligible for benefits during the summer period that fell between two academic years.

Thomas petitioned for review in King County Superior Court. The superior court affirmed the commissioner's decision. Thomas appeals.

## ANALYSIS

### Standard of Review

The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of a final administrative decision of the commissioner of the Employment Security Department. Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). Under the APA, a reviewing court may reverse an agency's adjudicative decision if, among other things, the agency erroneously interpreted or applied the law, the agency's decision was not supported by substantial evidence, or the agency's ruling was arbitrary or capricious. RCW 34.05.570(3)(d), (e), (i); Tapper,

---

to individuals who (1) provide noninstructional services for an educational institution, (2) request benefits for a period falling between two successive academic terms or years, and (3) have a reasonable assurance that they will perform the same or similar services in the next academic term or year. RCW 50.44.040(2).

-3-

69252-6-I/4

122 Wn.2d at 402. The party challenging an agency's action carries the burden of demonstrating the action was invalid. RCW 34.05.570(1)(a).

We review an administrative action from the same position as the superior court and apply APA standards directly to the agency record. Tapper, 122 Wn.2d at 402; Daniels v. Emp't Sec. Dep't, 168 Wn. App. 721, 727, 281 P.3d 310, review denied, 175 Wn.2d 1028 (2012). Thus, we review the commissioner's decision, not the administrative law judge's decision or the superior court's ruling. Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). A commissioner's decision is considered "prima facie correct." RCW 50.32.150; Anderson v. Emp't Sec. Dep't, 135 Wn. App. 887, 893, 146 P.3d 475 (2006). We review an agency's interpretation or application of the law de novo, giving substantial weight to the agency's interpretation of the statutes it administers. Smith v. Emp't Sec. Dep't, 155 Wn. App. 24, 32, 226 P.3d 263 (2010); Honesty in Envtl. Analysis & Legislation v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 96 Wn. App. 522, 526, 979 P.2d 864 (1999).[2] We review findings of fact for substantial evidence. Smith, 155 Wn. App. at 32. A reviewing court will not substitute its judgment for that of the agency regarding witness credibility or the weight of the evidence. Smith, 155 Wn. App. at 35. Here, Thomas assigns no

---

[2] Courts consistently accord a "heightened degree of deference" to the commissioner's interpretation of employment law due to the Department's expertise in administering the law. W. Ports Transp., Inc. v. Emp't Sec. Dep't, 110 Wn. App. 440, 449, 41 P.3d 510 (2002); see also Safeco Ins. Cos. v. Meyering, 102 Wn.2d 385, 391, 687 P.2d 195 (1984) ("Where an agency is charged with administering a special field of law and endowed with quasi-judicial functions, such as the Department of Employment Security, because of the agency's expertise in that field, its construction of words should be accorded substantial weight.").

-4-

error to the commissioner's findings (which incorporated the ALJ's findings) and, thus, we treat them as verities on appeal. RAP 10.3(g); Tapper, 122 Wn.2d at 407.

Reasonable Assurance Statute's Application

Under RCW 50.44.050—also called the "reasonable assurance" statute— employees of educational institutions do not qualify for unemployment benefits during any periods between successive academic years or terms. Specifically, "[b]enefits shall not be paid" based on an individual's noninstructional services for an educational institution

> for any week of unemployment which commences during the period between two successive academic years or between two successive academic terms within an academic year, if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms . . . .

RCW 50.44.050(2); cf. RCW 50.44.050(1) (parallel provision for a person's service "in an instructional, research, or principal administrative capacity"). In short, a claimant who (1) performs noninstructional services for an educational institution, (2) seeks benefits for a period falling between two successive academic terms or years, and (3) has reasonable assurance that he or she will perform the noninstructional services again in the second of the successive academic years or terms, is ineligible for benefits. RCW 50.44.050(2).

RCW 50.44.050(5) defines "academic year" with reference to the particular institution at issue: "As used in this section, 'academic year' means: Fall, winter, spring, and summer quarters or comparable semesters unless, based upon objective

criteria including enrollment and staffing, the quarter or comparable semester is not in fact a part of the academic year <u>for the particular institution</u>." (Emphasis added.)

The reasonable assurance statute is "conforming" legislation intended to bring the State into compliance with federal law—specifically 26 U.S.C. § 3304—in order to obtain federal funds for unemployment compensation. <u>Compare</u> RCW 50.44.050 <u>with</u> 26 U.S.C. § 3304(a)(6)(A); <u>see also</u> <u>Berland v. Emp't Sec. Dep't</u>, 52 Wn. App. 401, 407, 760 P.2d 959 (1988). These federal funds "are intended to provide benefits for workers during aggravated periods of unemployment." <u>Berland</u>, 52 Wn. App. at 407-08. We have explained that "unemployment during a school vacation is not the type of unpredictable layoff that unemployment benefits are designed to redress." <u>Berland</u>, 52 Wn. App. at 408-09.

Thomas's appeal focuses primarily on RCW 50.44.050(2)'s second factor: whether he sought benefits for a period falling between two successive academic years or terms. He does not challenge that his claim for benefits was based on noninstructional services provided to an educational institution, nor does he argue that he lacked a reasonable assurance of returning to work for the 2011–12 academic year. Instead, he argues that because he previously worked year-round for the school district—as lunchroom manager during the school year and custodian or groundskeeper during the summer—there was no break between terms and he qualified for benefits.

Thomas cites our decision in <u>Evans v. Employment Security Department</u>, 72 Wn. App. 862, 866 P.2d 687 (1994) for the proposition that "when there is no 'break' or vacation 'between academic terms,' these reasonable assurance statutes do not disqualify people from unemployment benefits merely because they are working in

educational institutions." Appellant's Br. at 10. Thomas claims that the year-round nature of his work qualifies him for unemployment benefits under Evans.

In Evans, a part time community college instructor requested a summer teaching position at the college, but she was not chosen for the position. Evans, 72 Wn. App. at 864. She applied for unemployment benefits for the summer quarter, but the Department denied her claim under RCW 50.44.050. Evans, 72 Wn. App. at 864. The ALJ and commissioner affirmed, but the superior court reversed and granted unemployment benefits for the summer. Evans, 72 Wn. App. at 864. The Department appealed to this court. Evans, 72 Wn. App. at 864. We framed the issue:

> [W]hether, under RCW 50.44.050(1), summer is an academic "term" at a community college . . . . If summer is not an academic term, but is a break between two successive terms (spring and fall, as the State here argues), then under RCW 50.44.050(1) Ms. Evans would not be eligible to receive unemployment benefits during the summer. On the other hand, if summer qualifies as a "term", then spring and fall terms are not successive, and unemployment benefits are allowed because summer cannot be a period "between two successive academic years or terms."

Evans, 72 Wn. App. at 865. We concluded that summer was an academic term at the college because it offered classes and awarded credits during the summer quarter and the parties failed to show that the summer term was in any way "qualitatively different from the other terms." Evans, 72 Wn. App. at 866. Thus, the period for which the claimant sought benefits occurred during an academic term, not between two successive academic terms. Accordingly, RCW 50.44.050 did not preclude the claimant from receiving unemployment benefits. Evans, 72 Wn. App. at 867.

Evans is distinguishable. There, we determined that the summer term at a particular community college was not a break between successive academic quarters

because the summer term was part of a year-round academic program, i.e., it offered classes and awarded credits. Unlike in Evans, here, the evidence supports a conclusion that summer break is a "period between two successive academic years." RCW 50.44.050(2) (emphasis added). Thomas argues he is in the same position as the claimant in Evans because he worked year-round and had no break in his work year. But in determining whether summer was part of the academic year in Evans, we focused on the particular characteristics of the school, not on the work history of the individual claimant. See Evans, 72 Wn. App. at 865-67. We concluded that summer was an academic term at the particular community college because the college offered classes, awarded grades, and granted credits during that time. Evans, 72 Wn. App. at 866-67. We based our decision in Evans on the fact that the college ran continuously on a year-round schedule, not on details regarding the claimant's individual employment. Contrary to Thomas's contention, Evans did not "hold[] that the year-round nature of the employment changes the analysis for eligibility . . . ." Appellant's Reply Br. at 7–8.

Evans also relied on an earlier version of RCW 50.44.050 that did not yet define "academic year." See former RCW 50.44.050 (1990). After Evans, the U.S. Department of Labor advised our State's Employment Security Department that the decision raised a federal conformity issue. See ESHB 1821 Final Legislative Report (1995). The legislature responded by adding a new definition of "academic year" to RCW 50.44.050, specifically "with respect to services . . . performed by part-time faculty at community colleges and technical colleges." Laws of 1995, ch. 296, § 2; ESHB 1821 Final Legislative Report (1995). In 1998, the legislature amended the statute again to

make the "academic year" definition applicable to all benefits based on services to educational institutions.[3] Laws of 1998, ch. 233, § 2; ESHB 2947 Final Legislative Report (1998).

RCW 50.44.050 currently provides that the Department, in determining whether a period is part of an academic year, should look to "objective criteria including enrollment and staffing . . . for the particular institution." RCW 50.44.050(5). The administrative record demonstrates that during the 2011 summer break, Thomas was "on a school break" and had received reasonable assurance "to return to work in the same or similar capacity after the Summer break from 6/23/11 through 9/6/11, returning 9/7/11." Certified Appeal Board Record (CABR) at 42. The record also contains a Seattle Public Schools calendar showing "Last Student Day[s]" on June 21 and 23, 2011, and the "First Day of School: 2011–12" on September 7, 2011. CABR at 48–49. No evidence indicates that summer was part of this particular school's academic year or that the school ran on a year-round schedule like the college in Evans. Similarly, no evidence indicates that Thomas had a continuing contract guaranteeing him work every summer. Thomas received summer work in 2008, 2009, and 2010 not because he was promised a permanent, full time, year-round position, but because he submitted his name each spring to indicate he was interested in available summer work.

---

[3] The 1998 amendment changed the definition of "academic year" to "Fall, winter, spring, and summer quarters or comparable semesters unless, based on objective criteria including enrollment and staffing, the quarter or comparable semester is not in fact a part of the academic year for the particular institution." Laws of 1998, ch. 233, § 2 (emphasis added).

Thomas cites no authority other than Evans for his argument that the commissioner must "consider the specific nature of [his] employment—regardless of the 'school employee' label" and that the year-round nature of his work made him eligible for benefits during summer 2011.[4] Appellant's Br. at 14; see Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (declining to consider arguments unsupported by reference to the record or citation to authority). Thomas argues that because he was unemployed "through no fault of his own," the Employment Security Act's preamble mandates that the Act's provisions be liberally construed in his favor. Appellant's Br. at 17. He also cites 3A Norman J. Singer, Statutes and Statutory Construction § 74.7 (6th ed. 2001 & Supp. 2003) for the proposition that "[p]rovisions which disqualify employees from receiving employment benefits must be narrowly construed." Appellant's Br. at 17 (alteration in original). Thomas claims that the commissioner erroneously construed RCW 50.44.050's disqualifying provisions "to broadly apply to Mr. Thomas merely because he worked at a school but without considering his specific circumstances." Appellant's Br. at 17. But as discussed above, neither the reasonable assurance statute nor the relevant case law requires the commissioner to consider a claimant's "specific circumstances." The statutory language is clear and the commissioner correctly applied it.[5]

---

[4] Thomas also cites no authority for his argument that "[m]erely having the label 'school employee' should not be sufficient reason to deny a person unemployment benefits, particularly when that person is employed for the entire year over the prior three years as was true of Mr. Thomas." Appellant's Br. at 17–18.

[5] The Department cites persuasive authority from Minnesota, which has similar conforming legislation. See Swanson v. Indep. Sch. Dist. No. 625, 484 N.W.2d 432 (Minn. Ct. App. 1992) (court considered a claim for benefits made by a year-round

-10-

Thomas meets RCW 50.44.050(2)'s three disqualifying factors discussed above. First, his claim for benefits was based on noninstructional services provided to an educational institution. Second, he sought benefits for a period beginning in July 2011, which was between the two successive academic years of 2010–11 and 2011–12. Finally, he testified that he knew he would be returning to work as a lunchroom manager for the 2011–12 school year. As discussed above, the party challenging the commissioner's decision bears the burden of demonstrating the commissioner's action was invalid. RCW 34.05.570(1)(a). Thomas fails to meet this burden. Weighing the factors is for the commissioner, and unless we are persuaded that the commissioner's conclusion is legally or factually erroneous, we will not disturb it. Thomas makes no factual challenge here, and we cannot say the commissioner's conclusion is legally wrong or arbitrary and capricious.

---

employee of a school district who was laid off on June 7, 1991, but was informed on June 14 that she would be rehired July 1, 1991; under plain language reading of Minnesota's reasonable assurance statute, employee was ineligible for benefits between June 14 and July 1 because those two weeks of unemployment occurred between two school years and she had reasonable assurance of reemployment in the upcoming school year); Halvorson v. County of Anoka, 780 N.W.2d 385, 391 (Minn. Ct. App. 2010) (teacher worked full-time during summer for several years, but as enrollment declined, school offered only reduced hours as a tutor in summer 2008 while assuring his full-time work would resume in the fall; court examined the particular school's characteristics and concluded the summer period fell between two successive academic years, noting, "That [the claimant] had received near full-time hours during the summer of 2006 or earlier years does not mean that he meets the requirements for unemployment benefits for the summer of 2008.").

These cases show that foreign jurisdictions approach these issues similarly. We note, however, that neither Swanson nor Halvorson addressed a statutory definition of "academic term or year." As the court in Halvorson pointed out, "The statute and Minnesota case law do not define 'academic year or term.'" Halvorson, 780 N.W.2d at 390. Here, our decision rests on a plain language reading of RCW 50.44.050—which defines "academic year" as discussed above.

## Attorney Fees and Costs

Thomas requests attorney fees and costs—payable from the unemployment compensation fund—under RCW 50.32.160 and RAP 18.1. RCW 50.32.160 provides for reasonable attorney fees if we reverse or modify the commissioner's decision. Because we affirm the commissioner's decision, Thomas is not entitled to attorney fees.

## CONCLUSION

Because Thomas sought benefits for the period between two successive academic terms and had reasonable assurance of employment in the second term, the commissioner properly denied unemployment benefits under RCW 50.44.050(2). We affirm the commissioner's decision and deny Thomas's request for attorney fees.

WE CONCUR:

-12-