FILED
COURT OF APPEALS
DIVISION II

2015 SEP -9 AM 11: 55

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STERICYCLE OF WASHINGTON, INC., | No. 46100-5-II |
| Appellant, | |
| v. | |
| WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION and WASTE MANAGEMENT OF WASHINGTON, INC., | PUBLISHED OPINION |
| Respondent. | |

SUTTON, J. — Stericycle of Washington Inc. appeals the superior court's order affirming the Washington Utilities and Transportation Commission's final order granting Waste Management of Washington Inc.'s application for non-exclusive statewide authority to provide biomedical waste collection services. Stericycle argues that the Commission (1) exceeded its statutory authority, (2) decided that biomedical waste collection customers would benefit from market competition without substantial evidence to support that decision, and (3) acted arbitrarily and capriciously. We hold that the Commission acted within its authority under the plain language of RCW 81.77.040 to grant Waste Management's application after it determined that Stericycle was not providing service to the satisfaction of the Commission and that its decision was based upon substantial evidence and was not arbitrary or capricious. Therefore, we affirm.

FACTS

I. THE COMMISSION'S HISTORICAL EVALUATION OF BIOMEDICAL WASTE SERVICE

The Commission regulates solid waste collection services under chapter 81.77 RCW. To operate in Washington, solid waste companies must first obtain a certificate of authority from the Commission that "public convenience and necessity" (PCN) require the company's operations. RCW 81.77.040. The Commission began issuing PCN certificates of authority to companies providing specialized services for biomedical waste collection in the 1980s following concerns about the spread of disease posed by disposing of this waste like regular garbage.[1] AR at 595 (*In re Am. Envtl. Mgmt. Corp.*, Order M.V.G. No. 1452, at 4 (Wash. Utils. & Transp. Comm'n Nov. 30, 1990)); AR at 632 (*In re Ryder Distrib. Res. Inc.*, Order M.V.G. No. 1596, at 6 (Wash. Utils. & Transp. Comm'n Jan. 25, 1993)).

Although neighborhood garbage collection service companies typically operate in a monopoly in a given territory, the Commission questioned whether universal collection of biomedical waste by a single company was useful in this specialized service. AR at 632 (*Ryder Distrib. Res.*, Order M.V.G. No. 1596, at 6). The Commission thus developed different factors for granting a PCN certificate to collect biomedical waste than for granting certificates to collect regular neighborhood garbage. AR at 632 (*Ryder Distrib. Res.*, Order M.V.G. No. 1596, at 6). In 1990, the Commission explained its belief that

> in the context of neighborhood solid waste collection, [RCW 81.77.040] contemplates an exclusive grant of authority as the best and most efficient way of

---

[1] Biomedical waste encompasses animal waste, waste contaminated with "biosafety level 4 disease waste" (blood and other excretions), cultures and stocks, human blood and blood products, pathological waste (biopsies, tissues, and other anatomical waste), and sharps waste. WAC 480-70-041.

2

serving all customers in a given territory. In this general context, it is assumed that all or most people and businesses in a given territory are also customers needing garbage service. Under these circumstances, an exclusive grant of authority in a given territory promotes service, efficiency, consistency and is generally in the public interest.

The collection of medical waste is quite a different situation. Customers are only a small percentage of the total business in any given territory. . . . Therefore, while sound policy and economic reasons exist in favor of exclusive authority for typical residential or commercial collection in a specific territory, those reasons are less compelling in this new, specialized area. The Commission is not ready to say that a grant of one application for statewide authority would preclude a grant of others, and will consider this element in future proceedings.

AR at 574-75 (*In re Sure-Way Incineration, Inc.*, Order M.V.G. No. 1451, at 16-17 (Wash. Utils. & Transp. Comm'n Nov. 30, 1990)).

To grant a PCN certificate to a company that will operate in a territory already served by a certificate holder, the Commission must determine whether the existing company or companies provide "service to the satisfaction of the [C]ommission." RCW 81.77.040.[2] In 1993, the Commission stated that when determining whether to grant a PCN certificate for biomedical waste collection service, unlike its determinations on whether to grant PCN authority for neighborhood garbage collection, it would not "limit its consideration to evidence of service failures of the sort that usually are significant in neighborhood garbage collection service." AR at 668 (*In re Sureway Med. Servs., Inc.*, Order M.V.G. No. 1663, at 10 (Wash. Utils. & Transp. Comm'n Nov. 18, 1993)).

---

[2] RCW 81.77.040 provides as follows,

When an applicant requests a certificate to operate in a territory already served by a certificate holder under this chapter, the commission may, after notice and an opportunity for a hearing, issue the certificate only if the existing solid waste collection company or companies serving the territory will not provide service to the satisfaction of the commission or if the existing solid waste collection company does not object.

3

Rather, it would also consider "need-related sufficiency of service considerations - - whether the existing service reasonably serves the needs of the specialized market." AR at 668-69 (*Sureway Med. Servs.*, Order M.V.G. No. 1663, at 10-11). Thus, it would give "considerable weight to testimony of [biomedical] waste generators regarding their service requirements." AR at 743 (*In re Pet'n of Comm'n Staff for a Decl. Ruling*, Docket No. TG-970532, Decl. Order, at 10 n.1 (Wash. Utils. & Transp. Comm'n Aug. 14, 1998)).

By 1998, the biomedical waste service industry had grown "into a highly competitive industry as a result of the Commission interpreting RCW 81.77.040 consistently with the unique requirements and attributes of the service." AR at 744 (*In re Pet'n of Comm'n Staff for a Decl. Ruling*, Docket No. TG-970532, Decl. Order, at 11). It is within this historical backdrop that we consider Stericycle's appeal of the Commission's approval of Waste Management's application for non-exclusive statewide biomedical waste service authority.

## II. STERICYCLE'S BIOMEDICAL WASTE SERVICE MARKET COMPETITION

Stericycle has provided statewide biomedical waste collection service since the Commission first granted it such authority in 1995. Stericycle competed with another company which also held statewide biomedical collection authority, but in 2000 Stericycle acquired that competitor, making Stericycle currently the sole solid waste company with statewide authority to collect biomedical waste.

Waste Management competed with Stericycle under its G-237 certificate before Stericycle's parent corporation bought Waste Management's biomedical waste operations in 1996. In 2011, the Commission allowed Waste Management to resume biomedical waste collection services under G-237 over Stericycle's objection. G-237 granted Waste Management authority to

collect biomedical waste in territory that encompasses 80 percent of the total amount of biomedical waste produced in Washington. After Waste Management resumed competition with Stericycle for biomedical waste collection service, Stericycle's revenues and total number of customers increased.

In December 2011, Waste Management applied to the Commission to extend its authority to collect biomedical waste statewide. Stericycle and several other smaller regional companies objected. These companies provide biomedical waste collection services within Waste Management's proposed expanded territory. In December 2012, the Commission conducted four days of evidentiary hearings on Waste Management's application for statewide nonexclusive authority for biomedical waste service.

### III. WASTE MANAGEMENT'S APPLICATION FOR NON-EXCLUSIVE STATEWIDE AUTHORITY FOR BIOMEDICAL WASTE SERVICE

At the hearings on Waste Management's application, eight biomedical waste generators testified that they wanted a market competitor to Stericycle for a variety of reasons: (1) competition would ensure they receive the best service and prices, (2) the larger businesses wished to use the same biomedical waste collection provider across the state for the sake of efficiency, (3) dissatisfaction with Stericycle's scheduling, pricing, and customer service, (4) a desire to exert leverage over Stericycle, (5) a desire for access to another service provider as a backup in case of catastrophe, and (6) for one generator, reduction in pollution emissions because Waste Management's facilities are closer to its location. Two biomedical waste generators testified that they experienced ongoing billing and customer service problems as Stericycle customers.

A Waste Management account developer, Jeff Norton, who previously worked for Stericycle, testified that, as a Waste Management employee, he witnessed a change in Stericycle's practices when Waste Management began competing with Stericycle. When Norton worked for Stericycle, he received complaints about the containers Stericycle provided to customers for collection. According to Norton, Stericycle did not want to change their collection container design because of its investment in the old container. Within a month of Waste Management's entry into the market with a different collection container design, however, Stericycle began offering the same new container that Waste Management offered and reduced its rates on that container, matching Waste Management's rate.

Norton acknowledged, however, that as a Waste Management employee he lacked personal knowledge of Stericycle's reason for the collection container change. Stericycle provided counter testimony that in response to customer inquiries it had been considering offering the new plastic container before Waste Management entered the market.

IV. THE COMMISSION'S APPROVAL OF WASTE MANAGEMENT'S APPLICATION

The administrative law judge (ALJ) granted Waste Management's application in an initial order. The ALJ ruled that Stericycle's billing and customer service issues did not make its service unsatisfactory to the Commission. Instead, the ALJ found that under RCW 81.77.040, Stericycle was not providing service to the satisfaction of the Commission based upon the generators' testimony of a need for a competitive alternative and Waste Management's evidence of market-place benefits of a competitor to Stericycle.

The ALJ recognized that there was no prior Commission ruling recognizing a competitive market, standing alone, as a justification for authorizing competing statewide authority, but the

6

ALJ reasoned that much had changed since the beginning of the biomedical waste industry to justify the need for competition. The ALJ stated explicitly that the Commission would no longer rely on a previous decision that dismissed competition as an insufficient reason to find unsatisfactory service. The ALJ concluded that Waste Management proved that consumers need its statewide services for public convenience and necessity and that the existing providers were not providing service to the satisfaction of the Commission. The ALJ also found that the public benefit of a competitive market outweighed "unsubstantiated claims" of economic harm to the existing companies and that Waste Management had demonstrated its financial and operational fitness.[3] Clerk's Papers (CP) at 43.

The objectors, including Stericycle, petitioned the Commission for administrative review of the initial order. In its final order, the Commission affirmed and adopted the entirety of the initial order, concluding that the initial order "properly reflect[ed] the intent of prior Commission decisions determining when existing carriers will provide service to the satisfaction of the Commission." CP at 21-22. Finding of fact 3 in the initial order stated that Waste Management "demonstrated the consumer need for, and positive results from, its expansion into the statewide bio-hazardous collection services market." CP at 43. The Commission found that its authority to grant competing biomedical waste collection service "is not limited to circumstances of inadequate service." CP at 26. It viewed such a conclusion not as a change to prior decisions but an "adaptation of regulation to the realities of the market." CP at 26. The Commission found that

---

[3] Stericycle does not appeal the ALJ's findings of fact and conclusions of law that the public benefit of a competitive market outweighed economic harm to existing companies and that Waste Management was financially and operationally fit to provide biomedical waste services.

substantial evidence supported Waste Management's application for non-exclusive statewide authority based upon the generators' testimony of a need for an additional service provider.

The objectors petitioned the superior court for judicial review. The superior court affirmed the Commission's final order. Only Stericycle appeals.

ANALYSIS

Stericycle claims the Commission exceeded its statutory authority in its interpretation of the Commission's governing statute, RCW 81.77.040, and claims that the Commission reversed its precedent without substantial evidence or reasoned explanation. Stericycle challenges finding of fact 3 of the initial order, which the Commission adopted in the final order. This finding states that consumers would benefit from Waste Management's expanded authority. We reject Stericyle's challenges.

I. JUDICIAL REVIEW OF RCW 81.77.040

A. CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY

When deciding whether to issue a PCN certificate to a biomedical waste service company, the Commission must first analyze five factors under RCW 81.77.040.[4] If the service territory that a biomedical waste company seeks to operate in is already served by another PCN certificate

---

[4] Stericycle does not appeal the Commission's determination that the evidence satisfied these five factors as to Waste Management's application for nonexclusive statewide authority for biomedical waste service collection. RCW 81.77.040 provides that the Commission may issue a PCN certificate to a waste collection company after it analyzes the following five factors: (1) the present service in the area to be served and the cost for that service, (2) the estimated cost of facilities to be used for collection and disposal, (3) a statement of the company's assets that will be expended on the collection and disposal plant, (4) the company's prior experience in the field, and (5) the sentiment in the community to be served as to the necessity of the proposed service.

holder and that holder objects to competition, the Commission may issue the PCN certificate for competing authority only if, after notice and opportunity to be heard, the Commission determines that the existing "company or companies serving the territory will not provide service to the satisfaction of the commission." RCW 81.77.040. Stericycle appeals the Commission's determination that it was not providing service to the satisfaction of the Commission.

B. STANDARD OF REVIEW

Judicial review of agency action is governed by the Administrative Procedure Act (APA).[5] RCW 34.05.510. In reviewing agency action under the APA, we stand in the same position as the superior court. *Pal v. Dep't of Soc. & Health Servs.*, 185 Wn. App. 775, 780-81, 342 P.3d 1190 (2015). When a statute directs that the agency shall exercise its discretion, we limit our function to determining whether that agency exercised its discretion within the law and we do not overrule the agency's discretion. RCW 34.05.574(1). The burden of demonstrating invalidity is on the party asserting it. *Cornelius v. Dep't of Ecology*, 182 Wn.2d 574, 585, 344 P.3d 199 (2015).

RCW 34.05.570(3) provides the only circumstances in which we may overturn an adjudicative agency proceeding. Stericycle's challenges fall under four of these provisions: (1) the final order is "outside the [Commission's] statutory authority," (2) the Commission erroneously interpreted the law, (3) the final order is unsupported by substantial evidence, and (4) the final order is arbitrary and capricious. RCW 34.05.570(3)(b), (d), (e), (i). Stericycle's challenges fail.

---

[5] Chapter 34.05 RCW.

## II. THE COMMISSION PROPERLY INTERPRETED ITS STATUTORY AUTHORITY

We review an agency's interpretation or application of the law de novo. *Chicago Title Ins. Co. v. Office of Ins. Comm'r*, 178 Wn.2d 120, 133, 309 P.3d 372 (2013). The purpose of statutory interpretation is to implement the legislature's meaning and intent. *O.S.T. v. Regence BlueShield*, 181 Wn.2d 691, 696, 335 P.3d 416 (2014) (*BlueShield*). If the statute's meaning is plain on its face, we give effect to that plain meaning and our inquiry ends, as we do not construe the statute otherwise. *BlueShield*, 181 Wn.2d at 696. We use the ordinary meaning of the statute's language, the context of the statutory provision, related provisions, and the statutory scheme as a whole to determine plain meaning. *Dellen Wood Prods., Inc. v. Dep't of Labor & Indus.*, 179 Wn. App. 601, 615, 319 P.3d 847, *review denied*, 180 Wn.2d 1023 (2014).

Stericycle argues that the Commission misinterpreted the plain and unambiguous language, "service to the satisfaction of the [C]ommission," under RCW 81.77.040 when it granted statewide biomedical waste service authority to Waste Management. Stericycle is correct that the statute is plain and unambiguous, but that plain language does not reach the result Stericycle advances.

### A. PLAIN LANGUAGE OF RCW 81.77.040

Stericycle argues that (1) the legislature has required a monopoly marketplace in the solid waste industry and (2) "service" under RCW 81.77.040 must be interpreted as a directive to the Commission to examine only the "attributes" of the services provided by existing collection companies to decide whether customers are satisfied with the existing companies. Br. of Appellant at 20. The plain language of RCW 81.77.040 does not support either argument.

The legislature has not mandated a monopoly market in the solid waste collection industry. The plain language of RCW 81.77.040 clearly contemplates competing certificate authority if the

Commission decides that existing service providers are not operating to the Commission's satisfaction. No language in RCW 81.77.040 mandates a monopoly model on solid waste collection service. Instead, it provides that the Commission may grant an application for competing authority if existing solid waste collection "company or companies" serving the territory will not provide service to the satisfaction of the Commission. RCW 81.77.040.

The plain language of RCW 81.77.040 reserves consideration of whether service is satisfactory to the Commission. By phrasing the key statutory requirement of RCW 81.77.040 as "satisfactory service," Stericycle glosses over who is to decide whether existing biomedical waste companies are providing adequate service. Service is satisfactory if the existing provider is serving the community "to the satisfaction of the [C]ommission" not, as Stericyle's argument suggests, to the satisfaction of the customers themselves. RCW 81.77.040 (emphasis added); e.g. Br. of Appellant at 20 ("The Commission's interpretation of RCW 81.77.040 would read the 'satisfactory service' requirement out of the statute.").

Stericycle acknowledges that the Commission is the entity that must be satisfied, but argues that "service" should be defined narrowly so that the Commission's discretion is restrained to focus on factors that point to whether customers are satisfied with existing service. That focus does not adhere to the plain language of RCW 81.77.040. The Commission and Waste Management focus on the phrase "service to the satisfaction of the [C]ommission," asserting that this language gives the Commission broad authority to determine its satisfaction before granting competing authority. RCW 81.77.040. We agree that the Commission has broad authority to determine to its satisfaction whether service is satisfactory.

B. THE COMMISSION PROPERLY EXERCISED ITS DISCRETION UNDER RCW 81.77.040

Stericycle relies heavily on *Superior Refuse Removal, Inc. v. Washington Utilities & Transportation Commission*, 81 Wn. App. 43, 913 P.2d 818 (1996), the only case to examine the meaning of "service to the satisfaction of the [C]ommission" under RCW 81.77.040. There, we affirmed the Commission's denial of an application for a PCN certificate to provide competing garbage collection services to commercial businesses in Yakima. *Superior Refuse*, 81 Wn. App. at 44. We held that the Commission's findings of fact were supported by substantial evidence in the record that the existing service provider's service deficiencies alleged by the petitioner were not widespread and therefore the Commission's conclusion that the existing provider was providing service to the "satisfaction of the [C]ommission" was supported by its findings of fact. *Superior Refuse*, 81 Wn. App. at 49.

Stericycle attempts to analogize this case to *Superior Refuse* because the Commission found that Stericycle's alleged billing and customer services issues did not support the need for Waste Management's statewide authority. But *Superior Refuse* is inapplicable here because that case was concerned only with neighborhood garbage collection service and disposal, and the Commission has differentiated biomedical waste from neighborhood garbage collection due to the unique attributes of the biomedical waste collection industry. AR at 575 (*Sure-Way Incineration*, Order M.V.G. No. 1451, at 17). *Superior Refuse* did not discuss the Commission's reasoning on the specialized needs of biomedical waste generators.

The Commission did not exceed its statutory authority under RCW 81.77.040 by allowing competition in the biomedical waste industry and in exercising its discretion granting Waste Management statewide biomedical waste service authority. Eight biomedical waste generators

testified that they were unhappy with their limited market choices for disposing of their specialized waste. Each of them testified that they wanted or needed a statewide market competitor to Stericycle. The record demonstrates that the Commission properly exercised its discretion under the plain language of RCW 81.77.040 by deciding that Stericycle was not providing service to the satisfaction of the Commission.

### III. THE COMMISSION'S ORDER IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS NOT ARBITRARY OR CAPRICIOUS

Stericycle next challenges the Commission's finding of fact 3 in the initial order and adopted by the final order that Waste Management demonstrated consumer need for, and positive results from, its expansion into statewide biomedical waste collection. Stericycle argues that the Commission's ruling was arbitrary and capricious because it reversed what Stericycle characterizes as a previous interpretation of RCW 81.77.040 without substantial evidence or reasoned analysis. We hold that the Commission's challenged finding of fact 3 was based upon substantial evidence, and its ruling was not arbitrary or capricious.

### A. SUBSTANTIAL EVIDENCE

We review an agency's findings of fact for substantial evidence. *Thomas v. Dep't of Emp't Sec.*, 176 Wn. App. 809, 813, 309 P.3d 761 (2013). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of its truth. *Cornelius*, 182 Wn.2d at 607. The substantial evidence standard of review is highly deferential to the agency's action. *ARCO Prods. Co. v. Wash. Utils. & Transp. Comm'n*, 125 Wn.2d 805, 812, 888 P.2d 728 (1995). On appeal, we will not invalidate an agency's discretionary decision without a clear showing of abuse. *ARCO Prods.*, 125 Wn.2d at 812. In deciding whether substantial evidence supports an agency's finding

of fact, we will not reweigh evidence or substitute our judgment for the agency's determination of witness credibility. *Thomas*, 176 Wn. App. at 813. Unchallenged findings of fact are verities on appeal. *Pal*, 185 Wn. App. at 781.

Substantial evidence on the record supports the Commission's finding of consumer need for and benefit from competition with existing service providers for biomedical waste collection. Eight generators of biomedical waste testified that they wanted and needed a competitor to Stericycle for a variety of reasons. The Commission found that the public benefits of a statewide competitive market outweighed "unsubstantiated claims" of economic harm to the existing companies, including Stericycle. CP at 43. Importantly, this finding of fact is a verity on appeal because Stericycle does not assign error to it. *Pal*, 185 Wn. App. at 781. Jeff Norton testified that he believed Stericycle's decision to provide the same new waste collection container that Waste Management began providing at a lower rate than Stericycle's other rates was a direct reaction to Waste Management's competition. Although Stericycle presented counter evidence to Norton's testimony, we do not reweigh evidence or make our own credibility determinations. *Thomas*, 176 Wn. App. at 813. Finding of fact 3 is supported by substantial evidence.

Stericycle also argues that the final order's paragraphs 12, 13, and 15 reference "factual allegations" that are not on the record and that Stericycle did not have an opportunity to rebut. Br. of Appellant at 36. We disagree. Paragraph 12 states,

> We further observe that the development of competition in former monopoly utility markets was only just beginning in Washington in the late 1980's and early 1990's. Due to a lack of experience with the impacts of allowing more than one company to provide service, the Commission was properly cautious and limited competitive entry to demonstrated instances in which multiple providers would serve consistent with the public interest. The Commission thus required that a new entrant in the biomedical waste collection market be willing and able to

provide service that was not being provided in the requested territory as determined by the needs of the customers of that specialized service.

CP at 25-26. Paragraph 13 states,

Twenty years later, the Commission has greater experience and comfort with competition in certain utility markets. Biomedical waste collection "has evolved into a highly competitive industry as a result of the Commission interpreting RCW 81.77.040 consistently with the unique requirements and attributes of the service." [*In re Pet'n of Comm'n Staff for a Decl. Ruling*, Docket TG-970532, Decl. Order at 11 (Wash. Utils. & Transp. Comm'n Aug. 14, 1998).] Stericycle currently competes with another certificated company to provide such service throughout the vast majority of the state—including with Waste Management for the last two years in territory that includes 80 percent of the generators in Washington—without any adverse impact on the companies' economic viability or ability to provide service. To the contrary, Waste Management's re-entry into the biomedical waste collection market in the Company's existing solid waste collection service territory has resulted in demonstrated benefits to consumers without detriment to Stericycle's revenues or customer count.

CP at 26 (footnotes omitted). Paragraph 15 states,

We view this conclusion[, that an applicant can demonstrate that existing companies will not provide service to the satisfaction of the Commission by proving unmet need for a competitive alternative and that the new entrant will enhance effectiveness of competition,] as less of a change to the Commission's determinations two decades ago than as an adaptation of regulation to the realities of the market. Existing biomedical waste collection companies will not provide service to the satisfaction of the Commission if the consumers of that specialized service need, and an additional company can provide, and an effective competitive alternative. We continue to adhere to the statement Stericycle quotes from the Commission's 2010 report to the legislature that the rate and service regulations applicable to ferry, garbage collection, and bus industries are intended to provide a surrogate for the pricing discipline that would be exerted by a competitive marketplace. But where competition can or does exist, as in the biomedical waste collection industry, regulation should ensure that consumers reap the benefits of multiple service providers by encouraging an effectively competitive marketplace.

> We will not use the statute to shield incumbent companies from the greater service option availability and pricing discipline that such a marketplace is intended to exert.

CP at 26-27 (footnotes and internal quotation marks omitted).

Paragraphs 12, 13, and 15 are not new factual allegations; they merely recite the evolution of the biomedical waste industry as compared to regular neighborhood garbage collection, and the Commission's response to that evolution. These recitations could not have come as a surprise to Stericycle. After multiple Commission orders since 1990 that reference the uniqueness of the biomedical waste industry, as compared to neighborhood garbage collection, and the Commission's statement that it would consider competition in future decisions, Stericycle cannot plausibly claim that it had no notice that the Commission might consider the need for competition and, as we have already held, substantial evidence supports the generators' need and desire for a competitive alternative to Stericycle. AR at 575 (*Sure-Way Incineration*, Order M.V.G. No. 1451, at 17); AR at 667 (*Sureway Med. Servs.*, Order M.V.G. No. 1663, at 10); AR at 744 (*In re Pet'n of Comm'n Staff for a Decl. Ruling*, Docket No. TG-970532, Decl. Order, at 11). The Commission's challenged finding of fact is supported by substantial evidence on the record and the Commission's orders did not present new facts.

B. ARBITRARY OR CAPRICIOUS

Finally, Stericycle argues that the Commission's final order was arbitrary and capricious because the Commission's initial and final orders in this case changed the way it defined "service"

16

without sufficient reasoning based on substantial evidence.[6] Because the Commission's final order is based upon its precedent of treating biomedical waste collection services differently than neighborhood garbage collection and its order contains sufficient reasoning to justify its decision, the Commission's final order was not arbitrary or capricious.

An agency acts arbitrarily and capriciously when its action is "willful, unreasoned, and taken without regard to the attending facts or circumstances." *Northwest Sportfishing Indus. Ass'n v. Dep't of Ecology*, 172 Wn. App. 72, 90, 288 P.3d 677 (2012). If the record demonstrates two possible opinions, an agency's action is not arbitrary or capricious if the agency gave the action due consideration even if we might believe it was erroneous. *Ass'n of Wash. Spirits & Wine Distrib. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 358, 340 P.3d 849 (2015). Stare decisis, the principal that reviewing courts will overturn precedent only if it is incorrect or harmful, plays only a limited role in administrative agency decisions. *City of Federal Way v. Koeing*, 167 Wn.2d 341, 343, 217 P.3d 1172 (2009); *Kittitas County v. E. Wash. Growth Mgmt. Hearings Bd.*, 172 Wn.2d 144, 173 n.9, 256 P.3d 1193 (2011). Agencies should not treat similar situations differently and should strive for equal treatment. *Seattle Area Plumbers v. Wash. State Apprenticeship & Training Council*, 131 Wn. App. 862, 879, 129 P.3d 838 (2006); *Kittitas County*, 172 Wn.2d at 173 n.9. Our scope of review under the arbitrary and capricious standard is very

---

[6] Stericycle argues that the Commission's decision was made without authority because it did not make a specific finding that "services provided by existing carriers are deficient." Br. of Appellant at 29 (citing *Krakenberger v. Dep't of Pub. Works*, 141 Wash. 168, 169, 250 P. 1088 (1926)). This argument is misplaced because the Commission explicitly found that a need for Waste Management's services and a competitive alternative to existing service providers outweighed any adverse economic impact on those existing services. Because the Commission used its discretion to consider competition in its evaluation of service, finding of fact 3, discussed above, constitutes a sufficient finding about existing service.

narrow and the party asserting it carries a heavy burden. *Ass'n of Wash. Spirits & Wine*, 182 Wn.2d at 359.

As recited above, the Commission's analysis in granting PCN certificates to biomedical waste service providers began over two decades ago. In 1990, the Commission first recognized the need for biomedical waste collection services. AR at 574-75 (*Sure-Way Incineration*, Order M.V.G. No. 1451, at 16-17). Because it determined that biomedical waste service did not fit the typical monopoly model of neighborhood garbage collection, the Commission stated that it would consider "in future proceedings" allowing biomedical service companies to compete in a given territory. AR at 575 (*Sure-Way Incineration*, Order M.V.G. No. 1451, at 17). Stericycle trivializes the Commission's statement that it would consider competition in the future as dicta and characterizes the respondents' arguments as a "gross exaggeration" of a mere "possibility" that the Commission could authorize additional statewide service in the future and not a general statement of pro-competition policy. Br. of Appellant at 39 n.125.

The Commission's subsequent decisions since *Sure-Way Incineration* contradict Stericycle's argument. The Commission has repeatedly built upon its initial recognition that competition could be beneficial in the biomedical waste service context. In 1993, the Commission explicitly recognized that strict adherence to the monopoly model in the biomedical waste collection industry would not necessarily best achieve the legislature's purpose in chapter 81.77 RCW. AR at 667 (*Sureway Med. Servs.*, Order M.V.G. No. 1663, at 9). The Commission explained that it would not limit its consideration to "service failures" of the sort common to neighborhood garbage collection. AR at 668 (*Sureway Med. Servs.*, Order M.V.G. No. 1663, at 10). The Commission also explained that in granting PCN authority to a biomedical waste service

company it would broaden its consideration to include "need-related sufficiency of service considerations - - whether the existing service reasonably serves the needs of the specialized market." AR at 668-69 (*Sureway Med. Servs.*, Order M.V.G. No. 1663, at 10-11).

In 1994, the Commission implemented this reasoning when it granted competing authority for biomedical waste collection services over the objection of two existing companies because the applicants demonstrated that they would provide service not offered by the existing companies. AR at 704-05 (*In re Med. Res. Recycling Sys., Inc.*, Order M.V.G. No. 1707, at 3-4 (Wash. Utils. & Transp. Comm'n May 23, 1994)).

In 1995, the Commission granted Stericycle its certificate for non-exclusive statewide authority to provide biomedical waste collection services. AR at 722 (*Ryder Distrib. Res.*, Order M.V.G. No. 1761, at 12). The Commission noted that competition can be detrimental to business but that competition can also bring "benefits to consumers," which had been demonstrated on the record before it. AR at 723-24 (*Ryder Distrib. Res.*, Order M.V.G. No. 1761, at 13-14).

By 1998, the Commission recognized that the biomedical waste collection industry had "evolved into a highly competitive industry as a result of the Commission interpreting RCW 81.77.040 consistently with the unique requirements and attributes of the service." AR at 744 (*In re Pet'n of Comm'n Staff for a Decl. Ruling*, Docket No. TG-970532, Decl. Order, at 11). The initial order on this docket number noted that while RCW 81.77.040 "expresses a preference for monopoly service in the collection of solid waste," the Commission had interpreted the statute according to the unique needs of biomedical waste generators, giving their testimony "considerable weight" when deciding if existing companies' service was satisfactory to the Commission. Reply

Br. of Appellant, App. A, Tab 13 (*In re Pet'n of Comm'n Staff for a Decl. Ruling*, Docket No. TG-970532, Initial Order, at 3 n.1 (Wash. Utils. & Transp. Comm'n Oct. 29, 1997)).[7]

In a 2011 order in Stericycle's earlier challenge to Waste Management's certificate authority, the Commission again noted that it regulates the biomedical waste collection industry differently than neighborhood garbage collection by authorizing competition because competition in the biomedical waste collection industry "promotes higher quality of service in terms of protecting the public health and safety." AR at 767-68 (*Stericycle of Wash., Inc. v. Waste Mgmt. of Wash., Inc.*, Docket No. TG-110553, Order 2, at 14-15 (Wash. Utils. & Transp. Comm'n July 13, 2011)). "Commission policy has historically encouraged competition in the provision of biomedical waste services." AR at 769 (*Stericycle of Wash.*, Docket No. TG-110553, Order 2, at 16). The Commission refused to erect barriers to entry into the biomedical waste collection market, contrary to Stericycle's urging. AR at 769 (*Stericycle of Wash.*, Docket No. TG-110553, Order 2, at 16).

Stericycle relies on the Commission's statement in 1993 that "mere preference for competition" does not demonstrate a need for an additional service provider. AR at 698-99

---

[7] The declaratory order in docket number TG-970532 did not adopt the initial order wholesale, but the final order does not contradict this rule in the initial order. AR at 734 (*In re Pet'n of Comm'n Staff for a Decl. Ruling*, Docket No. TG-970532, Decl. Order).

(*Sureway Med. Serv.*, Order M.V.G. No. 1674, at 4-5).[8] Given the context of the Commission's

historical evolution in regulating this particular industry, this isolated quote is not persuasive.

Furthermore, the *Sureway Medical Services* quote appears after the Commission's reiteration that

it gives considerable weight to the needs of generators of specialized waste; the testimony in that

case, however, did not demonstrate a great need for competing PCN authority. AR at 699

(*Sureway Med. Serv.*, Order M.V.G. No. 1674, at 5). Here, as we have already concluded,

substantial evidence on the record supports the Commission's finding of a need for competition,

not mere preference for it.

Based on this history, recited throughout the final order in this case, the Commission's

finding that Stericycle's service was unsatisfactory based upon the waste generators' testimony

about their need for competition was not arbitrary or capricious. The final order reiterated that the

Commission's satisfaction with service for specialized waste generators is measured according to

those customers' needs and that eight witnesses testified to the need for a statewide competitive

---

[8] The Commission explained that

> [t]he satisfactory nature of service by existing providers of specialized solid waste collection services will be measured according to the specialized needs of customers. The Commission will give *considerable weight* to the judgment of biohazardous waste generators regarding the sufficiency of existing service, because they are professionally involved in health care, and are in a unique position to evaluate the risks and benefits of collection and disposal services. . . .
>
> The applicant [in a previous order] made a very persuasive demonstration that existing companies, although providing "satisfactory" physical collection service, were not providing service that sufficiently met the specialized requirements of the customers. . . .
>
> The final order does not depart from the Commission's consistent view that . . . mere preference for competition[] does not demonstrate a need for an additional carrier.

AR at 698-99 (*Sureway Med. Serv.*, Order M.V.G. No. 1674, at 4-5).

alternative. The Commission acknowledged *Sureway Medical Services*'s statement that "mere preference for competition" is not sufficient to find unsatisfactory service, but decided to revisit that decision and then described the history of the biomedical waste industry, noting the Commission's encouragement of competition in this industry. CP at 36-37. From this history, the Commission concluded that its prior decision dismissing competition as an insufficient factor in granting PCN authority in the biomedical waste services industry no longer reflects "the realities of the current marketplace." CP at 38. This reasoned analysis is contrary to Stericycle's argument that the final order is arbitrary and capricious, and its argument fails.

We affirm the Commission's final order granting Waste Management statewide authority to provide biomedical waste collection service because the Commission did not exceed its statutory authority, and its decision was based on substantial evidence and was not arbitrary or capricious.

SUTTON, J.

We concur:

BJORGEN, A.C.J.

LEE, J.